Center City Residents Association, Appellant *v.* Zoning Board of Adjustment and 18th and Rittenhouse Associates, Appellees.

Argued October 3, 1979, before Judges CRUMLISH, JR., WILKINSON, JR. and MENCER, sitting as a panel of three.

*Christopher F. Stouffer,* with him, *Hamilton, Darmopray & Mallor,* for appellant.

*Ronald Beifeld,* Assistant City Solicitor, with him, *Michael H. Egnal, Stephen G. Brown,* of *Egnal and Egnal,* P.A., for appellees.

OPINION BY JUDGE MENCER, January 10, 1980:

This is an appeal by the Center City Residents Association (protestants) from an order of the Court of Common Pleas of Philadelphia County affirming the

decision of the Zoning Board of Adjustment of Philadelphia (Board) to grant a use variance to 18th and Rittenhouse Associates (applicant) for premises at 250 South 18th Street.

The premises consist of a 16-Story building with 28 apartment/condominium units situated in an R-16 residential zoning district. The applicant seeks a variance to use the ground floor for three professional or commercial offices as permitted in a C-2 commercial district. The Board granted a variance and listed C-2 commercial uses available to the applicant. The lower court affirmed, as do we.

Since the lower court took no additional evidence, in reviewing this matter we are limited to determining whether the Board abused its discretion or committed an error of law. *Ottaviano v. Zoning Board of Adjustment,* 31 Pa. Commonwealth Ct. 366, 376 A.2d 286 (1977).

Protestants argue that the applicant failed to meet its burden of proving its entitlement to a variance under Section 14-1802 of the Philadelphia Code. Further, they argue that the applicant failed to meet its burden of proving unnecessary hardship which is peculiar to the applicant's property and of proving that the proposed variance is not contrary to the public health, safety, or welfare. *See Ottaviano v. Zoning Board of Adjustment, supra.*

After carefully reviewing the record, we find there is support for the Board's conclusion that the criteria for a variance were met.[1] Two expert witnesses tes-

---

[1] We note that, in our view, this is a very close case in light of testimony of applicant's witnesses which is, at best, conclusory opinion evidence with regard to crucial issues. Nevertheless, we are mindful that the weight to be accorded this evidence is for the Board and we may not act as a super zoning board. *See Eighteenth & Rittenhouse Associates v. Zoning Board of Adjustment,* 26 Pa. Commonwealth Ct. 554, 364 A.2d 973 (1976).

tified that the ground floor was unsuited for residential use for economic and physical reasons. No use has been made of the floor for four years. Prior to that, doctors' offices occupied one-half of the floor as a nonconforming use, and in 1970 a variance, which expired before utilized, was granted for commercial use of the other half of the floor. Testimony indicated that the proposed use was compatible with surrounding commercial uses and would meet all the criteria of Section 14-1802 of the Philadelphia Code, implying, among other things, that there would be no detriment to the public interest. In response to a primary objection concerning increased congestion in the small residential lobby, the proposed plan includes separate entrances to accommodate commercial traffic.

Protestants also argue that the Board acted outside the scope of its authority in granting an open-ended variance which allowed a wide variety of commercial uses.[2] They contend that the Board has in

---

[2] The variance provided the following permitted uses:

(a) The following sales at retail, separately or in any combination: antiques; art good and artists' supplies; bakery goods; bicycles; books; photographic equipment; china, glass and metalware; confectionery goods; cosmetics; draperies; drugs; dry goods; electrical appliances and fixtures; fruits and vegetables; garden supplies; gifts and cards; groceries; hardware; hobby and handicraft merchandise; jewelry; luggage; meat; music material, merchandise, and musical instruments; newspapers and magazines; office equipment and supplies; optical and orthopedic goods; packaged prints; radio, phonograph, stereo and TV sets, components and parts; sporting goods; stationery; variety store merchandise; wallpaper; watches and clocks; wearing apparel.

(b) Barbershops; beauty shops; bicycle shops; laundry pick-up agency and/or dry cleaning pick-up agency; photographer's studio; tailor shop; and travel agency.

(c) Business or professional office or agency.

effect rezoned the premises and thereby undertaken a legislative function. We disagree.

In *Township of Haverford v. Zoning Hearing Board,* 21 Pa. Commonwealth Ct. 207, 344 A.2d 758 (1975), it was pointed out that the distinction between a variance and rezoning is dependent upon the nature of the change requested, as well as the size of the property. As Judge KRAMER noted in *Haverford:*

> Since every use variance, by defnition, sanctions developments not contemplated by the ordinance for the particular district involved, we must look to the 'spirit' of the planning scheme to determine whether the variance is, in essence, a rezoning.

*Id.* at 214, 344 A.2d at 761-62.

We are satisfied, after reviewing the record and the applicable zoning regulations, that the Board's action of granting a variance which provided a list of possible commercial uses within the C-2 classification did not constitute rezoning because the changes permitted were compatible with existing uses in the immediate area and were limited to the ground floor of a single building. In fact, it appears the Board actually restricted the requested variance and limited the C-2 commercial uses available to the applicant, thereby exercising its power to impose reasonable limitations and conditions upon the granting of a variance. *See* Section 14-1801(c) of the Code; *54th Street Center, Inc. v. Zoning Board of Adjustment,* 395 Pa. 338, 150 A.2d 335 (1959).

One issue remains. The hearing was originally scheduled for July 5, 1977 and was continued to Au-

---

(d) Florists, not to include accessory greenhouses.

(e) Retail sale of pet birds, pet fish, pet animals and accessory pet supplies; and pet grooming, not to include boarding of animals.

gust 16, 1977. In the interim, the hearing was rescheduled to July 21, 1977, and a letter dated July 12 noting the change was sent to counsel for the applicant and protestants. Protestants contend that the notice for the rescheduled hearing was insufficient to meet due process requirements.[3] We are unable to decide the merits of this issue for the following reasons. First, residents who appeared at the hearing and complained about insufficient notice could have raised this on appeal, *see* Section 14-1806(1) of the Philadelphia Code, but they did not. Second, protestants who received specific notice, were represented by counsel, and raised the issue before the Board failed to raise this issue before the Court of Common Pleas and therefore failed to preserve the issue for appeal to this Court. *See Clemens v. Upper Gwynedd Township Zoning Hearing Board,* 3 Pa. Commonwealth Ct. 71, 281 A.2d 93 (1971). *See generally* Pa. R.A.P. 302.[4]

Order affirmed.

## ORDER

AND Now, this 10th day of January, 1980, the order of the Court of Common Pleas of Philadelphia County, dated October 16, 1978, denying the appeal of the Center City Residents Association, is affirmed.

This decision was reached prior to the expiration of the term of office of Judge DiSALLE.

---

[3] There is no allegation that the Board failed to comply with the notice requirements in Section 14-1804(7) of the Philadelphia Code.

[4] By failing to raise the isuse before the lower court on appeal, protestants failed to seek the opportunity to present additional evidence on this issue or on substantive issues which might have cured a defect in the proceedings before the Board. *See* Section 14-1806(4) of the Philadelphia Code.