**ZONING HEARING BOARD OF SADSBURY TOWNSHIP and Crown Atlantic Company, LLC,**

v.

**BOARD OF SUPERVISORS OF SADSBURY TOWNSHIP.**

**Appeal of Crown Atlantic Company, LLC.**

Commonwealth Court of Pennsylvania.

Argued June 13, 2002.

Decided Aug. 19, 2002.

---

Sandra Hong Lee and John W. Nilon, Jr., Media, for appellant.

Maureen M. McBride, West Chester, for appellee.

BEFORE: LEADBETTER, Judge, LEAVITT, Judge, and DOYLE, Senior Judge.

OPINION BY Senior Judge DOYLE.

Crown Atlantic Co., LLC (Crown),[1] appeals from an order of the Court of Com-

---

1. Crown began its operations on April 1, 1999, and is a joint venture of Crown Castle International Corporation and Cellco Partner-

ship, which was formerly doing business as Bell Atlantic Mobile, now known as Verizon Wireless. For ease of reference, however,

mon Pleas of Chester County that reversed a decision of the Zoning Hearing Board of Sadsbury Township (Board), which had granted Appellant's application for a use variance to construct a telecommunications tower adjacent to the Route 30 Bypass in Sadsbury Township, Chester County. After careful review of the record, we reverse and remand the case to the Court of Common Pleas.

The Property that is the subject of this appeal is legally owned by Donald M. Hostetter and is located in the Rural–Residential (R–R) Zoning District of the township. It is situated north of Business Route 30 and between the eastbound and westbound lanes of travel of the Route 30 Bypass.[2] The shape of the Property is long, thin, and triangular and it is approximately 6.571 acres in size. To the west of the Property, also between the "access ramps" of the Bypass, are three other properties improved with residences, which existed prior to the construction of the Bypass. "No residences have been built on the land between the access ramps since the Bypass construction." (Board Finding No. 12). The property is landlocked with access being gained only through an easement that serves the residences and the Property.

By agreement dated June 1, 1998, Mr. Hostetter agreed to lease a 6400 square-foot portion of the Property to Crown for the construction of a 150–foot telecommunications tower and related 12–foot by 20–foot equipment building. The use proposed by Crown is not permitted in the R–R district, either by right or by conditional use.[3] Crown, therefore, filed an application with the Board requesting a use variance to erect the proposed structures, and also submitted a validity challenge to the Ordinance.

Hearings on Crown's application were held before the Board on August 18, 1998, November 17, 1998, and December 16, 1998. In support of its application, Crown offered the testimony of, *inter alia*, Mr. Hostetter and William Evans, Jr., the real estate manager for Crown. Mr. Hostetter testified that he uses the Property for agricultural purposes and farms the Property in conjunction with other properties in the area. He indicated, however, that farming of the Property alone is not profitable. (Board's Opinion, Finding of Fact No. 14). Mr. Hostetter also testified that

---

and because the distinction between the parties to this joint venture is not important to our decision in this case, we shall identify the parties, collectively as "Crown."

**2.** To simplify the description of this location, the property is located between, and in the middle of, the east and westbound lanes of travel of the Route 30 Bypass. The old "Business" Route 30 parallels and bisects for a considerable distance the "new" Route 30 Bypass which is, essentially, a limited access highway. The land is located north of Business Route 30 and south of the westbound lanes of traffic of the Route 30 Bypass.

**3.** Section 129–23 A of the Sadsbury Township Zoning Ordinance (Ordinance) allows the following uses by right in the R–R district: 1) Agriculture, 2) Township municipal uses, 3) Single-family detached dwellings, 4) Riding academies, 5) Forests and scenic wildlife preserves, 6) Public parks and playgrounds.

The conditional uses allowed in the R–R district are: 1) Lodges for climbing, fishing, nature observation or other similar Recreation purposes, 2) Outdoor Recreation areas and facilities: private parks, playgrounds, picnic grounds, campgrounds, golf courses, or country clubs, 3) Cemeteries, 4) Churches and synagogues, 5) Intensive agriculture, 6) Institution, 7) Veterinary clinics and offices, 8) Animal hospitals, 9) Public buildings and uses, excluding institutional buildings and uses. Section 129–23 C of the Ordinance.

he has attempted to sell the Property on several occasions but has been unsuccessful. *Id.* Mr. Evans testified that the Property could not be used for any of the uses permitted in the R–R district. (Finding of Fact No. 16).

In a decision dated January 25, 1999, the Board concluded that the Property has unique physical characteristics based on its shape, size, the fact that it is landlocked with access only through a limited easement, and because of its location between the access ramps and lanes of traffic of the Route 30 Bypass. The Board concluded further that the irregularity of the Property was not created by Crown, that the Property, because of the unique physical characteristics, could not be developed in strict conformity with the Ordinance, and that the construction of a telecommunications tower would not alter the essential character of the neighborhood or interfere with the purpose of the R–R district. Therefore, the Board determined that a variance was necessary to enable the reasonable use of the Property and granted Crown a variance to construct the proposed telecommunications tower and related building. The grant of the variance was made subject to the condition that the tower be constructed at least "1000 feet from the Eastern boundary lines of A. & M. Bedrich and Roger and Joann Johnson" where there are residences, and, to ensure that condition could be satisfied, the Board permitted a variance from the setback requirements in the R–R district.[4] (Board's Order). Furthermore, the Board also determined that, based on Section 129–74 E(1) of the Ordinance, which provides that "[b]uilding height limitations of this chap-

ter shall not apply to … communication towers," no variance from the maximum height restriction of thirty-five (35) feet in the R–R district was needed. *See* Section 129–24 D of the Ordinance (providing that the "[m]aximum height of structures" in the R–R district is limited to thirty-five feet).

The Township appealed the Board's decision to the Court of Common Pleas and Crown petitioned the court for leave to intervene in support of the Board's decision. Common Pleas granted the intervention and, by decision dated July 14, 2000, affirmed the Board's decision, concluding that the Ordinance was invalid because it violated the federal Telecommunications Act of 1996[5]. The Township then appealed to this Court, contending, *inter alia,* that Common Pleas erred by considering issues not raised by the Township, the only party appealing the Board's decision, and by failing to overturn the Board's grant of variances. In an unreported opinion, filed June 7, 2001, we determined that Crown, as an intervenor, could not address issues in defense, which were not raised by the Township, which was the only party appellant before the Court of Common Pleas. Thus, we vacated the order of Common Pleas and we remanded the case to have addressed the issues of whether the Board properly granted the use variance and whether it properly applied Section 129–74 E(1) of the Ordinance to determine the maximum allowed height of the tower.

On remand, the Court of Common Pleas determined that testimony relied upon by the Board was too vague and that not enough quantifiable evidence existed in the

---

4. The obvious purpose of this condition was to keep the tower as far away from the three residences as possible.

5. 47 U.S.C. §§ 160–614.

record to support the grant of a use variance. By an order dated November 16, 2001, Common Pleas reversed the Board and denied Crown's application for a use variance. Having done so, Common Pleas did not address the issue regarding the maximum height restrictions in the R–R district. Crown now appeals to this Court.

■ On appeal, Crown raises the following issue: whether the Board abused its discretion or committed an error of law in granting variances to permit the construction of the telecommunications tower and related building.[6] Crown contends that the record contains substantial evidence upon which the Board relied in granting Crown's application for a use variance, and that it was error for the Court of Common Pleas to substitute its judgment for that of Board in reversing the Board's decision. We agree.

■ As we have stated, our standard of review in a zoning case, where the Court of Common Pleas has taken no additional evidence, is limited to determining whether the zoning hearing board abused its discretion or committed an error of law. *Center City Residents Ass'n v. Zoning Board of Adjustment*, 48 Pa.Cmwlth. 416, 410 A.2d 374 (1980). An abuse of discretion will be found only if the zoning board's findings are not supported by substantial evidence, that is, such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Valley*

*View Civic Ass'n v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983). *Teazers, Inc. v. Zoning Board of Adjustment*, 682 A.2d 856 (Pa.Cmwlth.1996). Upon reviewing a decision of a zoning hearing board, a court may not substitute its judgment for that of the board; and, assuming the record demonstrates substantial evidence, the court is bound by the board's findings which result from resolutions of credibility and the weighing of evidence rather than a capricious disregard for the evidence. *Vanguard Cellular System, Inc. v. Zoning Hearing Board*, 130 Pa.Cmwlth. 371, 568 A.2d 703 (1989), *petition for allowance of appeal denied*, 527 Pa. 620, 590 A.2d 760 (1990).

■ The underlying controlling law of Section 910.2 of the Pennsylvania Municipalities Planning Code (MPC),[7] 53 P.S. § 10910.2, provides that, with regard to the grant of a variance, a zoning board may grant a variance if all of the following findings, where relevant, are made:

(1) **That there are unique physical circumstances** or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

6. Crown also presents a second issue: "Whether the Chester County Court of Common Pleas abused its discretion or committed error of law in reversing the grant of Use and Dimensional Variances ... for the construction of a telecommunications facility absent substantial evidence on a written record, contrary to the application." (Crown's Brief at 1). However, because no additional testimony was taken by Common Pleas, our standard

of review is to determine whether the Board abused its discretion or committed an error of law. *Rabenold v. Zoning Hearing Board*, 777 A.2d 1257 (Pa.Cmwlth.2001).

7. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11202. Section 910.2 of the MPC was added by the Act of December 21, 1988, P.L. 1329.

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the **reasonable** use of the property.

(3) That such unnecessary hardship has not been created by the appellant.

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

(Emphasis added). In short, for the grant of a variance to be proper, an applicant must demonstrate to the board that, due to the unique characteristics of the property, unnecessary hardship will result if the variance is denied and that the proposed use will not be contrary to the public interest. *Valley View.*

Discussing the applicant's burden with regard to the grant of a variance, our Supreme Court stated in *Allegheny West Civic Council, Inc. v. Zoning Board of Adjustment of the City of Pittsburgh,* 547 Pa. 163, 167–68, 689 A.2d 225, 227–28 (1997), that

[u]nnecessary hardship is established by evidence that the physical features of the property are such that it cannot be used for a permitted purpose or that the property can be conformed for a permitted use only at a prohibitive expense. Unnecessary hardship may also be established by evidence that the property has no value for any purpose permitted by the zoning ordinance.

(Citations omitted). Also, in *Halberstadt v. Borough of Nazareth,* 546 Pa. 578, 583, 687 A.2d 371, 373 (1997), the Court determined that testimony indicating a property could be used for alternative permitted uses should not be taken out of context, and if the testimony as a whole demonstrates that the uses are not feasible, the property owner should not be required to bear the burden of converting the property to those uses.

■ In the present case, Mr. Evans, a real estate manager with over thirty years of experience, testified that it was not feasible to use the Property for any use permitted under the Ordinance. (Notes of Testimony, N.T., Hearing of August 18, 1998, at 25).[8] Mr. Hostetter, the owner of the Property, testified that, although he

8. The Township contends that Mr. Evans' testimony may not be relied upon to support the grant of a variance because he "admitted" that a house could be built and sold on the property. The "admission" that the Township speaks of is indicated in the following testimony:

> Q. If you built a twelve hundred square foot home on 6.6 acres, could you sell it?
> A. Everything is saleable.
> Q. The answer is yes?
> A. From that perspective, it could be sold.

(N.T., Hearing of August 18, 1998, at 70). The question, however, makes no reference to the conditions of the Property nor does it suggest that selling such a house could be done at other than a prohibitive cost. To suggest that Mr. Evans' answer supports a finding that the Property reasonably can be developed with a single-family residence, the question should be framed with reference to the specific circumstances that exist here, *viz,* could one sell a house built on a narrow 6.6–acre property that is landlocked and located

currently uses the Property for agricultural purposes, he does so in conjunction with two other properties, and farming the Property as a "stand-alone" property would not be feasible. (N.T., Hearing of December 16, 1998, at 269–71). Mr. Hostetter further testified that he attempted to sell the Property to other farmers but had been unsuccessful due to the shape and location of the Property. (N.T., Hearing of December 16, 1998, at 271–72). In addition, the record contains the testimony of Carl D. Petterson, P.E., a professional engineer and expert in land planning, who testified that the irregular shape of the Property, its location between highway access ramps, and its access problems prohibit the Property from being developed for any of the uses permitted in the R–R district. (N.T., Hearing of November 17, 1998, at 223–29).

The Court of Common Pleas determined that such evidence was insufficient to support a finding of unnecessary hardship and concluded as follows:

> I doubt, quite frankly, that anybody will make a go of this property, either for farming or Residential purposes, and in that respect I agree with the Zoning Hearing Board. But I think that before I (as a Judge) can authorize a variance, I have to see more in terms of quantifiable hardship. The testimony here is just a little too vague.

(Common Pleas Opinion at 5). From this statement, the court appears to be persuaded that it is unlikely that anyone will make reasonable use of the Property as permitted by the Ordinance, but the Court then decides that the evidence is too vague to support a finding of unnecessary hard-

ship such that the grant of a variance would be proper. In doing so, we believe that the Court substituted its judgment for that of the Board.

The Board found that the evidence demonstrated unnecessary hardship in that, due to the unique characteristics of the Property, the Property can not be developed for any permitted purpose under the Ordinance or that doing so would not be feasible. *See Halberstadt; Allegheny West.* The Board also determined that the irregularity of the Property was not caused by Crown, that a variance is required to enable the reasonable use of the Property, and that allowing such a variance will not alter the essential character of the neighborhood or interfere with the purpose of the R–R district. These findings, which comply with Section 910.2 of the MPC, are supported by the record and the Board did not abuse its discretion in approving Crown's application for a use variance.

The issue remains, however, whether the proposed tower is subject to the maximum height restrictions of Section 129–24 D of the Ordinance.

Accordingly, the order of the Court of Common Pleas is reversed and the case is remanded to address the remaining issue regarding the height restrictions in the R–R district.

### *ORDER*

**NOW,** August 19, 2002, the order of the Court of Common Pleas of Chester County in the above-captioned matter is hereby reversed and the case is remanded to that court for a determination of whether the

---

between two limited access highway-access ramps? Mr. Evans' testimony as a whole

indicates that such a proposition would not be feasible.

proposed 150–foot telecommunications tower is subject to the maximum height restrictions of Section 129–24 D of the Ordinance.

Jurisdiction relinquished.