**WARNER JENKINSON COMPANY, INC., a/k/a Sensient Technologies Corporation, Appellant**

v.

**ZONING HEARING BOARD OF THE TOWNSHIP OF ROBESON and Robeson Township, Berks County, Pennsylvania.**

Commonwealth Court of Pennsylvania.

Argued Nov. 1, 2004.

Decided Dec. 8, 2004.

---

Allen R. Shollenberger, Wyomissing, for appellant.

Barbara J. Kern, Reading, for appellee, Robeson Township.

Eugene Orlando, Jr., Reading, for appellee, Zoning Hearing Board of Robeson Township.

BEFORE: McGINLEY, Judge, COHN JUBELIRER, Judge, McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Warner Jenkinson Company, Inc., a/k/a Sensient Technologies Corporation (Appellant), appeals from an order of the Court of Common Pleas of Berks County (trial court), dated May 24, 2004, affirming the decision of the Zoning Hearing Board of Robeson Township (the Zoning Hearing Board), dated December 15, 2003.

This case involves a land use appeal. On or about November 30, 2001, Appellant purchased from Crompton & Knowles (C & K) approximately 120.30 acres of land located in Robeson Township, Berks County, Pennsylvania (the Township). The subject property is located in the GIA—General Industrial (A) Zoning District.

C & K had previously used the subject property for manufacturing purposes. (R.R. at 28a–29a). The property has on it a building that C & K previously used for its manufacturing facility, several other structures and four "impoundment areas" used to store toxic and/or hazardous waste byproducts from manufacturing activities.

It appears that after Appellant purchased the subject property it continued manufacturing operations throughout the balance of 2001 and 2002, but in June, 2003, a "scaled down" process was commenced with the intent that production would cease sometime in September, 2003. (R.R. at 30a). It was planned that Appellant would continue to use the property for warehouse and shipping purposes into 2004. Id. It was represented that at this time, Appellant does not engage in manufacturing and does not produce toxic or hazardous waste byproducts and has no need or use for the impoundment areas.

Given Appellant's limited use of the subject property, the agreement of sale between Appellant and C & K contemplated that Appellant would move to subdivide the property, and, upon completion of the subdivision, Appellant would transfer to C & K a subdivided lot containing two impoundment areas. C & K would then maintain those impoundment areas and make sure that they are in compliance

with all Department of Environmental Protection (DEP) regulations.

To that end, Appellant submitted a preliminary/final subdivision plan (the Plan) to the Township Engineer. The Plan proposed the subdivision of the property into five lots. Lot 1 would consist of 53.8 acres containing the manufacturing facility and two active impoundment areas. Lot 2 would consist of 7.71 acres containing two closed impoundment areas and a fifty-foot wide access strip along the boundary of Lot 1, so that Lot 2 would be connected to Route 724.[1]

The two impoundment areas on Lot 2 contain toxic and/or hazardous waste which resulted from past manufacturing operations. The impoundments on Lot 2 are referred to as impoundments 1 and 2. Impoundments 1 and 2 are closed.[2] The closed impoundments are subject to a closure plan for at least a thirty year period, which requires that they be routinely inspected and reports be filed with DEP. The inspection includes groundwater monitoring and inspection for burrowing animals. Additionally, the property is permanently deed restricted to notify the public and prospective purchasers that the property contains "closed waste areas."

By correspondence dated February 1 and February 27, 2003, the Township Engineer denied the application for subdivision and informed Appellant that it would have to seek relief from the Zoning Hearing Board in order to separate Lot 1 and Lot 2. The Township Engineer took the position that, given the presence of the impoundment areas, the current use of proposed Lot 2 did not constitute a principal use permitted by right per Article X, Section 1003, of the Township's Zoning Ordinance.[3]

---

1. Appellees describe the proposed Lot 2 as a "tortured configuration starting at the highway with a 50–foot access strip that runs northwesterly approximately 500 feet from the roadway, which then turns due north and runs approximately more than 1,000 feet to the first of two separate rectangular areas containing the impoundment areas. The long snake-like access strip enters the first rectangular parcel at an oblique angle. This rectangular parcel containing impoundment 2 is connected to a second rectangular parcel containing impoundment 1 by a 75–foot strip of land approximately 300 feet in length." (Appellees' brief at 7–8). The impoundments are immediately adjacent to the manufacturing plant that would remain on Lot 1.

2. The closure was accomplished by lining the impoundment areas with a "geomembrane liner" to prevent waste from moving into the subsurface of the ground. The area is filled up with waste materials until full. At the time of closure, a "solidification" process ensues during which additives are included as "reagents" in order to create a structural integrity for the purposes of building a cap on top of the impoundment. A cap system is then constructed over the top of the waste products. The cap system is then covered with 18 inches of soil, 6 inches of topsoil and vegetative cover. (R.R. at 42a–44a).

3. Article X, Section 1003A of the Township's Zoning Ordinance, specifies the "uses by right" in the GIA district, as follows:
   1. General Agricultural Uses, subject to Section 1327.
   2. Single family detached dwelling.
   3. Office building.
   4. Research facility.
   5. Printing and publishing operations.
   6. Wholesale sales and warehousing operations.
   7. Trucking operations, provided that the storage of refuse trucks shall be within a completely enclosed structure.
   8. Facilities for the testing, production, packaging, fabrication, processing, assembly, manufacture, compounding, or bottling of foods, goods, or materials, including repair and cleaning operations related to such uses, provided that all such activities are carried out within a completely enclosed structure.
   9. Structures and facilities owned by the Township or by an Authority created by the Township.
   10. Structures and facilities owned by a duly recognized public utility.

On or about July 15, 2003, Appellant filed an appeal with the Zoning Hearing Board, and the Zoning Hearing Board conducted a hearing on September 25, 2003.[4] By decision dated December 15, 2003, the Board sustained the determination of the Township Engineer. The Zoning Hearing Board found that Appellant could not create a subdivided lot containing only the impoundment areas because the impoundment areas qualified as an accessory use only.

Appellant appealed to the trial court. After hearing argument on the matter, the trial court affirmed the determination of the Zoning Hearing Board.

On appeal,[5] Appellant argues that the Zoning Hearing Board and trial court abused their discretion and/or committed an error of law. Specifically, Appellant argues that the Zoning Hearing Board and trial court erred when they concluded that impoundment areas 1 and 2 constitute an accessory use of the land. Appellant argues that substantial evidence does not exist within the record to support such a determination. Appellant asserts that the Zoning Hearing Board and trial court improperly considered the presence of impoundment areas 1 and 2 as constituting an activity which is an ongoing use of the property, despite the fact that the manufacturing activity has ceased. (*See* R.R. at 204a, and trial court opinion at 5). Appellant contends that there is no prohibition in the Township's Zoning Ordinance which prevents the reuse of these properties once they have been reclaimed pursuant to DEP regulations. Finally, Appellant contends that public policy favors an interpretation of the Zoning Ordinance which encourages the rehabilitation, remediation and reuse of tainted lands such as the subject property.

In furtherance of the above arguments, Appellant takes the position that the closure process stabilizes the land and rehabilitates it so that it can be put to a new use.[6] (R.R. at 53a). Additionally, Appellant contends that substantial evidence supports its position that proposed Lot 2 can be used in conformity with the Township's Zoning Ordinance, including permitted uses under Section 1003A of the Zoning Ordinance, and that proposed Lot 2

---

11. Accessory uses and structures to the above uses when located upon the same lot as such use.

4. Appellees state that because the Zoning Hearing Board lacks jurisdiction over appeals of subdivision plans, counsel for the parties determined that Appellant's true concern was in the nature of a land use appeal because of the determination that a portion of property intended to be subdivided was presently being used to store manufacturing wastes and was an accessory use to the manufacturing use. The parties stipulated that the review of this determination was the true nature of the appeal, and Appellant amended the appeal to reflect such agreement.

5. Our standard of review in a zoning case, where the trial court has taken no additional evidence, is limited to determining whether the zoning hearing board abused its discretion or committed an error of law. An abuse of discretion will be found if the board's findings are not supported by substantial evidence. *Zoning Hearing Board of Sadsbury Township v. Board of Supervisors of Sadsbury Township,* 804 A.2d 1274 (Pa.Cmwlth.2002).

6. Appellant's expert witness, Paul Stratman, testified that the regulations relating to impoundments 1 and 2 do not restrict the future use of the property, "except to the extent that any future use would not be allowed to compromise the integrity of the existing cover system." (R.R. at 56a). He further testified that even at the end of the thirty year monitoring period, the stored materials would be just as hazardous as they were at the time of the hearing, and the risks of exposure from breach of the impoundments areas would still exist. (R.R. at 61a–62a).

can meet all requirements for subdivision.[7]

Appellees state that the nature of the filing limits the Zoning Hearing Board to a determination of whether or not the impoundment facilities containing toxic or hazardous waste products adjacent to a manufacturing facility are "accessory uses" to the manufacturing operation. Moreover, Appellees note that Appellant was not requesting a change in use and was not proposing a new use.

Appellees take the position that the permanent storage of these hazardous wastes is and remains an accessory use, and that Appellant cannot ignore the presence of the impoundment areas and pretend that they do not exist simply because they are closed and the manufacturing activity has ceased. An accessory use, without a principal use, is not permissible.

We agree with the trial court that the facts do not support Appellant's argument. The trial court properly concluded that "although the impoundment areas are no longer used as active depositories, the waste which was already deposited is still present and is being stored in a secure manner." (Trial court opinion at 5). Under such circumstances, the storage of hazardous waste constitutes a present and existing use.[8]

In the case at hand, the presence of impoundment areas on proposed Lot 2 qualified as an accessory use to the manufacturing facility that had been operated on the subject property. Article II, Section 202 of the Zoning Ordinance, defines the term "accessory use" as follows:

ACCESSORY USE: use subordinate and incidental to some other use, known as the principal use, which is carried out on the same lot (although not necessarily within the same structure) as such principal use.

(Original Record at Zoning Ordinance).

Because the impoundment areas qualified as an accessory use only, they must be considered in that context. The trial court properly explained that "[a]n accessory use is subordinate to and dependent upon its principal use. It does not qualify as a permissible use independent of the principal use. This status does not change merely because the principal use is removed or has ended." (Trial court opinion at 5–6).

This Court has held that a lot without a principal use but only a use accessory to a principal use is not permitted. *Kelly v. Zoning Hearing Board of Mars Borough,* 124 Pa.Cmwlth. 121, 554 A.2d 1026 (1989), *petition for allowance of appeal denied,* 522 Pa. 606, 562 A.2d 828 (1989). In the case at hand, the proposed subdivision would cause proposed Lot 2, containing impoundment areas 1 and 2, to exist as a separate lot without any principal use being associated with the lot. Under such circumstances, the impoundment areas would no longer qualify as an accessory

---

7.  Mr. Stratman testified that agricultural/horticultural type uses would be well suited for the area, a parking lot could be placed on top of one of these areas, or that recreational uses are possible, including golf courses, driving ranges, ball fields and parks. (R.R. 52a–54a).

8.  The trial court found it significant that:

This use is one that requires monitoring from its owner and is subject to regulations from [DEP]. The Board made findings pointing out that the hazardous waste will continue to exist indefinitely, even after the useful life of the protective membrane has expired. The presence of the hazardous waste is something that cannot be disregarded or ignored simply because the principal use has ceased, the need for a location to deposit additional waste is abandoned and the surface land could be utilized for a permissible use under the Zoning Ordinance.

(Trial court opinion at 5–6).

use and they would not qualify as a permissible principal use either. For those reasons, we must conclude that the Zoning Hearing Board and the trial court properly determined that the impoundment areas qualified as an accessory use, and that the application for subdivision plan was properly denied because it would result in a lot that contained an accessory use without a principal use.[9],[10]

Accordingly, the order of the trial court is affirmed.[11]

### ORDER

AND NOW, this 8th day of December, 2004, the order of the Court of Common Pleas of Berks County, dated May 24, 2004, is hereby affirmed.

9. We do not conclude that where someone proposes a new use and wishes to create a new lot which contains impoundments of toxic or hazardous waste, that the mere presence of impoundments *by themselves* prevents the establishment of a new use if all other requirements of the municipality's zoning ordinance are met. An applicant might be able to establish a new or concurrent use on the land; however, such was not proposed in this case and has not been addressed by this opinion.

10. Although public policy may favor reuse of industrial lands, the opinion of this Court does not forever preclude activity on the subject property.

11. The trial court, citing *Bell Atlantic Mobile Systems, Inc. v. Zoning Hearing Board of the Township of O'Hara*, 676 A.2d 1255, 1263 (Pa.Cmwlth.1996), noted "that it is permissible for a Board to deny an application for a subdivision for failure to conform to the requirements of the applicable Zoning Ordinance." (Trial court opinion at 6).