# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| 6301 Forbes Avenue Partners,<br>Stephen Lange | : | |
| | : | |
| | : | |
| v. | : | No. 1818 C.D. 2019 |
| | : | Argued: October 13, 2020 |
| Zoning Board of Adjustment of<br>the City of Pittsburgh, Dr. Lawrence<br>S. Newman, Dr. Silvija Singh and<br>City of Pittsburgh | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Appeal of: Dr. Lawrence S. Newman<br>and Dr. Silvija Singh | : | |
| | : | |

BEFORE: HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE ELLEN CEISLER, Judge
HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON                      FILED: November 16, 2020

Drs. Lawrence S. Newman and Silvija Singh (Owners) appeal an order of the Court of Common Pleas of Allegheny County (trial court) reversing a March 21, 2019 determination of the City of Pittsburgh Zoning Board of Adjustment (ZBA). The ZBA's determination granted Owners a special exception and variance to move their psychological counseling practice to 1655 Shady Avenue, Pittsburgh, Pennsylvania (Subject Property), a site that is zoned for residential use. Owners' proposed use of the Subject Property would be nonconforming. 6301 Forbes Avenue Partners and Stephen Lange (Objectors) challenged the determination, asserting that the ZBA erred in granting the special exception and variance because the application was successive to an identical, previously unsuccessful, special

exception application by Owners for the Subject Property. On appeal,[1] Owners argue that the trial court erred in reversing the decision of the ZBA, as it did not abuse its discretion or commit an error of law in granting the special exception and variance. Upon consideration, we reverse the decision of the trial court.

## I. Background

Owners currently operate a psychological counseling practice as tenants at 6301 Forbes Avenue, Pittsburgh, Pennsylvania, a building owned by 6301 Forbes Avenue Partners, one of the Objectors in the present case. Owners' Br. at 5. Owners purchased the Subject Property with the intent to move their practice to a unit in the Subject Property. *Id.* at 5-6. 6301 Forbes Avenue is adjacent to the Subject Property. Reproduced Record (R.R.) at 52a. The Subject Property is zoned R2-L[2] and currently used for three residential units, which constitutes a nonconforming use. R.R. at 17a-24a.

The Subject Property is a 2 1/2-story structure with four on-site parking spaces. *Id.* at 85a, 87a, 92a, 225a. The most recent Certificate of Occupancy for the Subject Property, issued on February 17, 1989, permits a "multiple family dwelling with three dwelling units and a two-car detached garage with two outdoor parking stalls." *Id.* at 92a. Currently, three tenants live in the Subject Property's first floor

---

[1] When, as here, a trial court accepts no additional evidence, "our review is limited to considering whether the zoning hearing board erred as a matter of law or abused its discretion." *S. of S. St. Neighborhood Ass'n v. Phila. Zoning Bd. of Adjustment*, 54 A.3d 115, 119 n.1 (Pa. Cmwlth. 2012). "An abuse of discretion occurs when the findings of the [ZBA] are not supported by substantial evidence." *MarkWest Liberty Midstream & Res., LLC v. Cecil Twp. Zoning Hearing Bd.*, 102 A.3d 549, 553 n.6 (Pa. Cmwlth. 2014).

[2] We take judicial notice of the Pittsburgh Zoning Code and its corresponding Use Table at Pittsburgh, Pennsylvania., Code of Ordinances (Code) §911.02 (2020). "R2" is defined in the Code as "two-unit residential" with an "L" designation indicating a "Low-Density Subdistrict." Code §§903.02.C, 903.03.B.1.

apartment and use all four of the on-site parking spaces. *Id.* at 225a-26a. This apartment includes a kitchen, three bedrooms, and a full bath. *Id.* at 113a.

Owners propose to convert the first floor apartment of the Subject Property into office space for their counseling practice. Owners' Br. at 13. The Owners plan to renovate the apartment into four counseling rooms and a galley kitchen, maintaining the bathroom for a total office area of less than 1,500 square feet. *Id.*; R.R. at 113a. The second and third floor apartments of the Subject Property would remain unchanged. R.R. at 210a.

Under Owners' plan, Owners would maintain the current façade of the Subject Property, with the exception of an added access ramp for persons with disabilities. *Id.* at 113a, 224a. The on-site parking spaces would still be available for tenants of the remaining apartments, as well as for counselors and for patients of the practice with disabilities that require use of the new ramp. *Id.* at 225a. Other patients would continue to use the public parking lot across Shady Avenue. *Id.* at 225a-26a.[3]

The current three-unit dwelling contained within the Subject Property is a nonconforming use. Three dwelling units are not permitted on a parcel zoned R2. Pittsburgh, Pa., Code of Ordinances (Code) §911.02 (2020). From 1972 to 1989, the City of Pittsburgh permitted the use of the first floor of the Subject Property as a dance school pursuant to a special exception granted by the ZBA. R.R. at 98a-99a. The Subject Property abuts parcels zoned LNC (Local Neighborhood Commercial) and RM-VH (Multi-Unit Residential, Very High Density). *See* Code §§903.02.E, 903.03.D, 904.02.

---

[3] In their current office location at 6301 Forbes Avenue, Owners direct their patients to utilize the same Shady Avenue public parking lot. R.R. at 88a-89a.

The Owners applied to the ZBA on November 16, 2018, for a variance and a special exception for their proposed use of the Subject Property. R.R. 43a-45a. The ZBA gave notice to owners of nearby parcels and scheduled a hearing for December 13, 2018.[4],[5] *Id.* at 45a-54a, 198a-200a. Owners posted the required notice of the ZBA Hearing on the Subject Property. *Id.* at 57a-58a.

At the ZBA hearing on December 13, 2018, Objectors requested that the hearing not proceed, as Owners had previously received a deemed denial for an identical application for a special exception at the Subject Property, which, therefore, precluded Owners from the presently requested relief.[6] *Id.* at 207a-15a. The ZBA

---

[4] In their brief, Owners note that Stephen Lange, one of the Objectors, resides at 1642 Denniston Street, Pittsburgh, Pennsylvania, "several houses away from the Subject Property." *See* Owners' Br. at 17-18 n.5; Reproduced Record (R.R.) at 46a-54a. "In fact, Lange does not live close enough to the Subject Property to have received notice from the City of the ZBA Hearing." *Id.*

[5] At the December 13, 2018 hearing, Dr. Newman, one of the Owners, testified that prior to purchasing the Subject Property, he approached his landlord, a principal at 6301 Forbes Avenue Partners. "I told him my plan to move my practice from his office building [6301 Forbes Avenue] to [Subject Property]. He registered zero complaint or concern. He said, 'I will work with you on that.'" R.R. at 241a; Owners' Br. at 18.

[6] In 2017, Owners requested a special exception to convert the first floor residential unit of the Subject Property into a commercial office. R.R. at 149a. The ZBA held a hearing on June 29, 2017, and granted the requested relief on September 7, 2017. *Id.* at 104a-06a. Due to inaction on the part of the ZBA, the special exception was not granted within 45 days of the hearing, as required by the Code. Section 922.07.C of the Code reads:

> After the public hearing, the Board shall act to approve, approve with conditions, approve in part, deny or deny in part the application, within forty-five (45) days of the Board hearing. Where the Board fails to render its decision within the period required by this subsection, or fails to hold the required public hearing within forty-five (45) days from the date of the completed application being received by the Administrator, the decision shall be deemed to have been rendered in denial of the applicant unless the applicant has agreed in writing or on the record to an extension of time.

**(Footnote continued on next page…)**

4

hearing officer allowed the hearing to proceed on the substance of the Owners' application but permitted interested parties to make written submissions on the question of preclusion. *Id.* at 214a-15a. The ZBA granted the application for special exception and variance on March 21, 2019. *Id.* at 17a-24a.

Objectors appealed the ZBA's decision to the trial court. Upon consideration of residential districts as defined by the Code and the history of the Subject Property's use, the trial court reversed both the ZBA's approval of the special exception and its approval of the variance. *Id.* at 270a-71a. Owners now appeal to this Court.

## II.    Discussion

Owners argue that the ZBA acted within its discretion and did not commit an error of law in granting the special exception.[7] Further, Owners assert that, contrary to Objectors' view, Owners were not precluded from consideration of

---

As a result, on June 20, 2018, the trial court issued an order entering a deemed denial of the application. R.R. at 150a. In response, Owners filed a motion to remand in an attempt to have the merits of the special exception application heard by the ZBA. The trial court denied the motion on February 22, 2018. *Id.* at 151a. On May 10, 2018, the trial court denied Objectors' Petition for Rule to Show Cause, decreeing that there would be "no further proceedings on this application without further order of this [c]ourt." *Id.* at 152a. On June 20, 2018, the trial court issued an order vacating the approval of the special exception by the ZBA due to a deemed denial. *Id.* at 150a. Owners filed an appeal of the order to this Court on August 27, 2018, but discontinued the appeal prior to filing the application that is the subject of the present case. *See* R.R. at 43a.

[7] While the ZBA granted a variance for the Subject Property on March 21, 2019, (in addition to the special exception), and the trial court vacated approval of both the variance and the special exception on November 5, 2019, Owners do not raise the issue of the variance on the merits before this Court. In Owners' brief, the argument presented focuses solely on the merits of approving the special exception. However, Owners request relief in the form of reinstating the decision of the ZBA, a decision approving both the special exception and the variance. Therefore, we evaluate this case on the basis of the special exception with an understanding that the trial court's order implicates both the special exception and variance for the Subject Property.

their special exception application by the ZBA as a result of a trial court order, the doctrine of *res judicata*, or the requirements of the Code. Owners ask that this Court reverse the decision of the trial court and reinstate the decision of the ZBA approving the special exception application.[8]

## A. ZBA: Abuse of Discretion and Error of Law

The current use of the Subject Property is a nonconforming use under the Code. *See* Code §§903.02.C, 921.02. As a residential structure located in an "R2" zoning district with three apartment units, the Subject Property exceeds the "two-unit" maximum. Code §903.02.C. Section 903.02 of the Code reads: "A nonconforming use which has a valid Certificate of Occupancy and lawfully occupies a structure or vacant site on the date that it becomes nonconforming may be continued as long as it remains otherwise lawful, subject to the standards and limitations of this section." Code §903.02. Per the Reproduced Record, Subject Property, as it currently exists, meets these requirements to lawfully remain. *See* R.R. at 92a.

The City of Pittsburgh allows a property owner to change a nonconforming use to another nonconforming use as a special exception. Code §921.02.A.4. Section 921.02.A.4 of the Code explains:

> A nonconforming use may be changed to another nonconforming use, as a special exception, provided that the new use shall be of the same general character or of a character that is more closely conforming than the existing, nonconforming use. The determination of whether a

---

[8] Objectors raise an issue for the first time before this Court. Objectors argue that they were denied due process before the ZBA as a result of a conflict of interest by an attorney appearing on behalf of the ZBA. Objectors' Br. at 1. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa. R.A.P. 302 (a); *see Meyer v. City of Pittsburgh Historic Review Comm'n*, 201 A.3d 929, 940 (Pa. Cmwlth. 2019). As this issue was newly raised on appeal, and not at the trial court level, we consider the issue of due process to be waived and will not address it within our discussion.

6

proposed use is a conforming use or is less intense than the existing nonconforming use shall be made by the [ZBA] based on factors including, but not limited to:

(a) Hours of operation;

(b) Number of parking spaces;

(c) Number of employees;

(d) Physical size of building relative to surrounding buildings;

(e) Design characteristics of building relative to design features of surrounding buildings; and

(f) Traffic generation.

In addition, in determining whether a proposed change to another nonconforming use is more or less intensive than the existing use, the [ZBA] shall use the Use Classification System of Sec. 911.02, wherein all residential and mixed use zoning districts are listed in hierarchical order of intensity, with RSD being the least intensive and GI being the most intensive. This hierarchy of zoning districts shall not apply to Special Districts or Downtown districts. Within the Use Classification System, the Zoning Board shall use the following criteria:

1. Any use which is permitted as-of-right in a less intensive zoning district shall be considered less intensive than a use permitted as-of-right within a more intensive zoning district.

2. Within the same zoning district, a use shall be considered more intensive than another use if the approval required for such use is a higher level in the following hierarchy: as-of-right (P), Administrator's Exception (A), Special Exception (S), Conditional Use (C).

3. When two (2) uses cannot be compared according to the above criteria, the Zoning Board shall consider the districts where the uses are permitted, and shall consider the Use Standards of Sec. 911.04 in determining the relative intensity of use.

Code §921.02.A.4. Therefore, as Owners request to change the use of the Subject Property from one nonconforming use to another nonconforming use, in evaluating their application for special exception, the criteria contained in Section 921.02.A.4 of the Code apply.

"The important characteristic of a special exception is that it is a conditionally permitted use, legislatively allowed if the standards are met." *Bray v. Zoning Bd. of Adjustment*, 410 A.2d 909, 911 (Pa. Cmwlth 1980) (citing *City of Pittsburgh v. Herman*, 298 A.2d 624 (Pa. Cmwlth. 1973)). In evaluating an

7

application for special exception, the ZBA must engage in a burden shifting scheme, requiring the applicant to demonstrate that in complying with the specific requirements of the ordinance, the proposal is presumptively consistent with the promotion of health, safety and general welfare. *Bray*, 410 A.2d 909; *Siya Real Estate LLC v. Allentown Zoning Hearing Bd.*, 210 A.3d 1152, 1157 (Pa. Cmwlth. 2019). Objectors then have the burden to prove that the proposal is in fact detrimental to health, safety, and welfare and that the detrimental impact is greater or different from that which the governing body anticipated. *Bray*, 410 A.2d 909; *see also Appeal of O'Hara*, 131 A.2d 587 (Pa. 1957).

In reviewing the decision of the ZBA, the trial court noted that "the [ZBA] must consider several factors[,] including: hours of operation, number of parking spaces, number of employees, physical size of building relative to surrounding buildings, design characteristics of the building relative to design features of surrounding buildings and traffic generation." Trial Ct. Op., 11/05/2019, at 3. Further, the trial court explains that the ZBA must consider whether the proposed use is more or less intensive than the previous nonconforming use and the general criteria for special exceptions set forth in Section 922.07.D of the Code.[9] *Id.*

---

[9] Section 922.07.D.1 of the Code reads:

**General Criteria**

The Zoning Board of Adjustment shall approve Special Exceptions only if (1) the proposed use is determined to comply with all applicable requirements of this Code and with adopted plans and policies of the City and (2) the following general criteria are met:

(a) That the development will not create detrimental visual impacts, such that the size and visual bulk of the proposed development is determined to create an incompatible relationship with the surrounding built environment, public streets and open spaces and land use patterns;

(b) That the development will not create detrimental transportation impacts, such that the proposed development is determined to adversely affect the safety and

**(Footnote continued on next page…)**

8

The trial court decided that while the ZBA evaluated the application for special exception under these criteria, its conclusion that the Owners met their burden was not justified by the record. Trial Ct. Op., 11/05/2019 at 6.

Owners argue that the trial court erred by reversing the decision of the ZBA, as the ZBA did not abuse its discretion or commit an error of law. Citing *Zoning Hearing Board of Sadsbury Township v. Board of Supervisors of Sadsbury Township*, 804 A.2d 1274, 1278 (Pa. Cmwlth. 2002), Owners assert that the ZBA relied on substantial evidence, or "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." (citing *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637 (Pa. 1983)). As a result, in Owners'

_____

convenience of residential neighborhoods or of vehicular and pedestrian circulation in the vicinity of the subject tract;

(c) That the development will not create detrimental transportation impacts, such that the proposed development will result in traffic volumes or circulation patterns that substantially exceed the capacity of streets and intersections likely to be used by traffic to and from the proposed development;

(d) That the development will not create detrimental operational impacts, including potential impacts of hours of operation, management of traffic, servicing and loading operations, and any on-site operations associated with the ongoing functions of the use on the site, in consideration of adjacent and surrounding land uses which may have differing sensitivities to such operational impacts;

(e) That the development will not create detrimental health and safety impacts, including but not limited to potential impacts of noise, emissions, or vibrations from the proposed development, or functions within the proposed site which would otherwise affect the health or safety of others as a direct result of the operation of the proposed use;

(f) That the development will not create detrimental impacts on the future and potential development of parcels in the vicinity of the proposed site of the development; and

(g) That the development will not create detrimental impacts on property values.

Code §922.07.D.1.

view, the ZBA decision "result[ed] from resolutions of credibility and the weighing of evidence rather than a capricious disregard for the evidence." *Zoning Hearing Bd. of Sadsbury Twp.*, 804 A.2d at 1278.

The ZBA outlined the criteria for granting a special exception under Section 922.07.D.1 of the Code and for granting a special exception to change one nonconforming use to another under Section 921.02.A.4 of the Code in its March 21, 2019 decision. ZBA Decision, 03/21/2019, Conclusions of Law (C.L.) Nos. 19, 23. The ZBA found Owners presented sufficient evidence to satisfy the Code. First, the hours of operation at the Subject Property will decrease, as the counseling practice will only operate during daytime hours on weekdays, as opposed to the current 24/7 operation within the existing first floor residential unit. Also, the number of employees, two counselors, is no greater than the current occupancy of three tenants within the residential unit. Additionally, the physical size of the building would not change and the only change related to "design characteristics" would be an access ramp. Finally, new traffic will not be generated as the same clients that visit the adjacent building at 6301 Forbes Avenue would visit the Subject Property. Findings of Fact (F.F) Nos. 20-27.[10]

Further, the ZBA found that Owners presented sufficient evidence to demonstrate that the proposed special exception would not produce detrimental impacts as outlined in Section 922.07.D.1 of the Code. C.L. No. 22. Specifically, the ZBA references a letter submitted by the Squirrel Hill Urban Coalition (SHUC), a recognized community group, in support of Owners' application for special

---

[10] The ZBA also evaluated the effect of granting the special exception on the number of parking spaces as required by Section 921.02.A.4.b of the Code and found that Owners met this criterion. The Subject Property currently has four parking spaces and Owners stipulated through testimony at the ZBA hearing, at the request of a neighbor, that the number of parking spaces will not exceed six at any given time. R.R. at 224a, 228a.

10

exception. R.R. at 115a; C.L. No. 24. In the letter, the SHUC described a public meeting that it hosted with Owners and neighbors to discuss the proposed changes to Subject Property. *Id.* The president of SHUC wrote:

> SHUC supports the proposed change in use. This support is based on:
> - The fact that historically this building had had non-residential uses on the first floor
> - The proposed change is not considered major
> - The impacts such as traffic would be minor
> - Parking is not a major issue because there is parking in back of the building and the municipal lot is across the street . . . .

R.R. at 115a. "The ZBA found credible and persuasive the community organization's assertions that the proposed office use would not have negative impacts on the surrounding neighborhood." C.L. No. 24.

"To prove a 'detrimental impact[,]' objectors to a proposed special exception cannot simply speculate but must raise specific issues regarding the effect of the proposed use on the public interest and they must show with 'a high degree of probability' that the effect of the proposed use will be substantial." C.L. No. 28 (citing *Allegheny Tower Assocs., LLC v. City of Scranton Zoning Hearing Bd.*, 152 A.3d 1118, 1124 (Pa. Cmwlth. 2017)). As the ZBA concluded that Owners met their burden of compliance with the Code for a special exception for the change of one nonconforming use to another, the burden shifted to Objectors to identify and present evidence with respect to any general detrimental impacts and the burden of persuasion with respect to those impacts. C.L. Nos. 26-27 (citing *Allegheny Tower*, 152 A.3d at 1124 (quoting *Bray*, 410 A.2d at 912-13)). "[O]bjectors failed to submit substantial or credible evidence that demonstrates to any degree of probability that the proposed use would have a detrimental impact on the surrounding neighborhood." C.L. No. 29.

11

"Upon reviewing a decision of a [ZBA], a court may not substitute its judgment for that of the [ZBA]; and, assuming the record demonstrates substantial evidence, the court is bound by the [ZBA]'s findings which result from resolutions of credibility and the weighing of evidence. . . ." *Zoning Hearing Bd. of Sadsbury Twp.*, 804 A.2d at 1278 (citing *Vanguard Cellular Sys., Inc. v. Zoning Hearing Bd. of Smithfield Twp.*, 568 A.2d 703 (Pa. Cmwlth. 1989)). "An abuse of discretion will only be found if the [ZBA]'s findings are not supported by substantial evidence that a reasonable mind might accept as adequate to support a conclusion." *Zoning Hearing Bd. of Sadsbury Twp.*, 804 A.2d at 1278 (citing *Valley View Civic Ass'n*, 462 A.2d 637).

The ZBA found that Owners presented credible evidence to support their application for a special exception, demonstrating that the proposed use would not result in detrimental impacts. In contrast, the ZBA found that Objectors did not present credible evidence to contradict Owners' claims, thereby failing to demonstrate a detrimental impact if the special exception is approved. Further, the ZBA cited substantial evidence and relevant Code provisions in making its determination. We decline to substitute our judgment for that of the ZBA as its decision was based on credibility determinations. The ZBA did not abuse its discretion or commit an error of law in granting Owners' application for a special exception.[11]

## B. Preclusion

---

[11] As discussed *supra* at note 7, we decline to evaluate the merits of Owners' application for a variance. Because we determined that the ZBA's granting of the special exception was proper, a determination on the application for a variance is unnecessary to grant Owners relief.

12

Objectors argue that the ZBA erred in approving Owners' application in the present case because it was a successive application, identical to the application that was found to be a "deemed denial" by the trial court on June 20, 2018. Owners contend that because the application at issue in the present case included an application for both a special exception and a request for a variance, it does not constitute a successive application. The ZBA previously found that while Code Section 922.07.E[12] does not allow "a similar application" to a denied application for special exception to be filed, in the ZBA's view, the application considered at present contains significant changes from the previous application.

Objectors ask this Court to view Owners' application as a successive application, noting that the trial court declined to evaluate this argument. *See* Trial Ct. Op., 11/05/2019, at 3. However, the ZBA concluded "that the current application, which seeks both a variance and a special exception as alternative theories of approval, is significantly different from the first application and [it] is not barred." C.L. No. 10. In interpreting the Code, the ZBA found that the present application constitutes "a different use than the original request." Code §922.07.E; *See* C.L. No. 10. This Court will not substitute its judgment for that of the ZBA, and therefore, we defer to the ZBA's determination that, in weighing the evidence, the

---

[12] Code Section 922.07.E reads:

**Successive Applications**

In the event that the [ZBA] denies an application for a Special Exception, a similar application shall not be refiled unless the [ZBA] determines that significant physical, economic or land use changes have taken place within the immediate vicinity, or a significant zoning regulation text change has been adopted, or when the reapplication is for a different use than the original request. The applicant shall submit a statement in detail setting out those changes which he or she deems significant and upon which he or she relies for refiling the original application.

Code §922.07.E.

present application is not a successive application as described in the Code.[13]  *See Zoning Hearing Bd. of Sadsbury Twp.*, 804 A.2d at 1278.

"Pennsylvania courts generally apply *res judicata* narrowly in zoning matters, because the need for flexibility outweighs the risk of repetitive litigation." *Callowhill Ctr. Assocs., LLC v. Zoning Bd. of Adjustment*, 2 A.3d 802, 809 (Pa. Cmwlth. 2010) (citing *Price v. Bensalem Twp. Zoning Hearing Bd.*, 569 A.2d 1030 (Pa. Cmwlth. 1990)).  While Objectors argue that Owners' present application should be barred based on the principle of *res judicata*, Owners assert that Pennsylvania courts have never applied *res judicata* under the circumstances at issue in this case.  Owners cite two characteristics common to cases holding that *res judicata* precluded the claim:  1) The first proceeding resulted in an adjudication on the merits against the applicant; and 2) in the second proceeding, the ZBA determined for itself that *res judicata* barred the applicant's claim.  *See Callowhill Ctr. Assocs., LLC*, 2 A.3d at 805-06.  Neither of these characteristics are present in this case.

As we defer to the ZBA's determination that Owners' present application is not barred by the successive application provision of the Code, we also accept the ZBA's determination that the present application is not barred by *res judicata*.  *See* C.L. Nos. 12-17.  Further, the prior precedent of Pennsylvania courts indicates that the principle of *res judicata* has not been applied in this context.  In

---

[13] The ZBA also discussed the issue of successive applications as a matter of fairness, acknowledging that, in the present case, the deemed denial of Owners' 2017 application was due to inaction on the part of the ZBA, not Owners.  "[T]o deny the [Owners] the right to reapply following a deemed denial decision would deprive [Owners] of a full and fair hearing on the merits of their request due to no fault of their own, in violation of [Owners'] due process rights."  C.L. No. 9.  Therefore, the ZBA declined to bar the present request as a successive application.

applying *res judicata* "narrowly" in zoning matters, we conclude that Owners' present application and appeal in this Court are not barred as a result of preclusion.

## III. Conclusion

The ZBA did not abuse its discretion or commit an error of law in granting Owners' application for special exception. Further, Owners' present application and subsequent appeal are not precluded by *res judicata*. We reverse the decision of the trial court.

_____
J. ANDREW CROMPTON, Judge

15

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

6301 Forbes Avenue Partners,         :
Stephen Lange                     :
                                 :
           v.               :     No. 1818 C.D. 2019
                                 :
Zoning Board of Adjustment of     :
the City of Pittsburgh, Dr. Lawrence :
S. Newman, Dr. Silvija Singh and   :
City of Pittsburgh              :
                                 :
Appeal of: Dr. Lawrence S. Newman :
and Dr. Silvija Singh          :

# **O R D E R**

**AND NOW**, this 16th day of November 2020, we **REVERSE** the decision of the Court of Common Pleas of Allegheny County and **REINSTATE** the Zoning Board of Adjustment of the City of Pittsburgh's approval of Dr. Lawrence S. Newman's and Dr. Silvija Singh's application for special exception.

 

                                      _____
                                      J. ANDREW CROMPTON, Judge