# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James G. Sweeney, Eileen Sweeney,   :
Kurt Woerner and Maureen Woerner   :
        :
          v.           :   No. 113 C.D. 2019
        :   Argued: June 8, 2020
Riegelsville Borough Zoning Hearing   :
Board         :
        :
Appeal of: Borough of Riegelsville   :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE ANNE E. COVEY, Judge


**OPINION NOT REPORTED**


MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER            FILED: November 13, 2020

The Borough of Riegelsville (Borough) appeals from an Order of the Court of Common Pleas of Bucks County (common pleas) dated December 31, 2018, which reversed the Riegelsville Borough Zoning Hearing Board's (Board)[1] Decision affirming the Borough's Zoning Officer's determination that James G. Sweeney, Eileen Sweeney, Kurt Woerner, and Maureen Woerner (collectively, Applicants) are not permitted to construct a detached garage and accompanying driveway in their proposed location. Applicants own and reside at 303 Poplar Road, Riegelsville, Pennsylvania (the Property). As reflected on the right side of the plan below (Lot 2), the Property is rectangular in shape and has limited street frontage. Poplar Road,

---

[1] The Board is not participating in this appeal.

a public street that is perpendicular to the Property, dead ends in the southwest corner of the Property. A private alley, which is also perpendicular to the Property, runs to the southeastern corner of the Property. Situated in the middle of the Property is an L-shaped house. Applicants proposed to construct a detached garage and accompanying driveway in the southeast corner of the Property, which would connect to the private alley.



(Reproduced Record (R.R.) at 16a.)

2

At issue in this case is, first, whether the proposed location of the detached garage is within the Property's front yard and, if so, whether Applicants are permitted to connect the proposed driveway to the private alley. The Board determined that the proposed garage would be impermissibly located in the front yard of the Property, in violation of the Borough's zoning ordinance (the Ordinance), and, therefore, was not permitted. The Board further determined that the proposed driveway was not permitted because it would not connect to a public street, as required by the Ordinance. Common pleas reversed, concluding that the location of the proposed garage was not within the Property's front yard and that the proposed driveway did not violate the Ordinance because driveways are not required to connect to a public street under the Ordinance. On appeal, the Borough generally argues that the Board neither abused its discretion nor committed an error of law in concluding that the proposed garage and accompanying driveway are not permitted in the proposed location and, therefore, common pleas' December 31, 2018 Order should be reversed. Upon review, we reverse.

## I. Factual Background and Procedural History

### A. Zoning Application

In July 2017, Applicants, through an agent, submitted a zoning application (Application) to construct an accessory garage and accompanying driveway in the southeast corner of the Property. (R.R. at 29a.) The following rendering, which is not drawn to scale, was submitted by Applicants with the Application to demonstrate the location of the proposed garage and accompanying driveway.

3



(*Id.* at 37a.)

By letter dated September 13, 2017, the Zoning Officer denied the Application, concluding that the proposed garage would impermissibly be located in the front yard of the Property in violation of the Ordinance. The Zoning Officer also concluded that the proposed driveway running from the garage to the private alley is not permitted because it did not connect to a public roadway as required by the Ordinance. Thereafter, Applicants filed an appeal from the Zoning Officer's determination to the Board.

4

B.    Board Hearing

On October 24, 2017, the Board considered Applicants' appeal at a public hearing.  At the hearing, Mr. Sweeney testified, in relevant part, as follows.  He, along with his wife Eileen Sweeney, his daughter Maureen Woerner, and his son-in-law Kurt Woerner, own and reside at the Property.  (Hearing Transcript (Hr'g Tr.) at 14, 20.)  Mr. Sweeney described the Property as a one-acre parcel with street frontage on Poplar Road, a "stub street" that is perpendicular to the Property.  (*Id.* at 21, 48.)  Mr. Sweeney indicated that Poplar Road was originally planned to end in a cul-de-sac in front of the Property but, after he filed a petition to vacate the cul-de-sac, the Borough Council vacated that plan in 2013.  (*Id.* at 44-45.)  He stated that the Property's configuration is the result of a recorded subdivision (Subdivision Plan), which was approved by the Borough Council in 2014.  (*Id.* at 48.)  Mr. Sweeney testified that the Subdivision Plan was not appealed after the Borough Council's approval, stating "to [his] knowledge, there was never any proceedings brought to challenge the validity of" the Subdivision Plan.  (*Id.* at 47.)  The Subdivision Plan was admitted into evidence and bears the signatures of, among others, Mr. Sweeney and his wife Eileen Sweeney.  (R.R. at 106a-07a.)

Using the Subdivision Plan as a demonstrative, Mr. Sweeney explained that there is a dashed line on the Subdivision Plan that "extends [approximately 138 feet] from the westerly boundary line to the southern boundary line [of the Property] in a diagonal fashion," and that this dashed line denotes the Property's front yard setback.  (Hr'g Tr. at 48.)  Mr. Sweeney testified that when the Subdivision Plan was being considered, there was a concern by the Borough Planning Commission as to what area of the Property constituted the front yard.  (*Id.* at 45-46.)  He stated that the Planning Commission ultimately determined the location of the Property's front yard

5

setback on the Subdivision Plan, using the dashed line, and that the Borough Council accepted and approved the Planning Commission's determination as "a compromise . . . in this circumstance" in light of the unique configuration of the Property. (*Id.* at 45-48.)

As to the Property's improvements, Mr. Sweeney testified that situated in the center of the Property is a two-story "L-shaped house," which he had built in 2016, and a driveway extending from the residence's attached garage to Poplar Road. (*Id.* at 21.) Mr. Sweeney further testified that in 2017 he applied, through an agent, to build a residential accessory structure in the form of a detached garage along the eastern boundary line of the Property. (*Id.* at 49-54.) He stated that the proposed garage would be 28 by 28 feet and abutting the garage would be a parking pad with a driveway connecting to the private alley. (*Id.* at 50.) Mr. Sweeney explained that a title commitment he ordered when he purchased the Property reflected that an easement appurtenant, granted in 1947, ran with the Property and allowed the owner of the Property to use the alley for ingress and egress. (*Id.* at 32-37.) After examining the relevant land records, Mr. Sweeney concluded that the easement appurtenant has not been extinguished and that Applicants are the successors to those ingress and egress rights. (*Id.*)

With respect to the location of the proposed garage, Mr. Sweeney stated on more than one occasion during his testimony that the proposed garage would not be located in the Property's front yard setback. (*Id.* at 50, 52-53.) He testified that the Zoning Officer denied the Application, stating that the proposed garage would be impermissibly located within the Property's front yard and that the proposed driveway would not connect to a public street. (*Id.* at 55-56.) Mr. Sweeney contested the conclusions reached by the Zoning Officer again asserting that the

6

proposed garage would not be located in the Property's front yard setback and asserting that the Ordinance does not require a driveway to connect to a public street. (*Id.*)  At the conclusion of Mr. Sweeney's direct examination, his attorney moved for the admission of 15 exhibits, including the Subdivision Plan, which were admitted without objection.  (*Id.* at 61.)

> The Board's Solicitor then had the following exchange with Mr. Sweeney:
>
> [Board Solicitor]:  . . . The actual subdivision, the final one, it has what was marked in yellow as the front yard setback line.  The question that I guess the Board has looked at is if that's a setback, if that's the front setback line, how are you defining where the front yard is?  Obviously it's inside that triangle to some extent because that's more of a front yard, but where is the **rest of the front yard**, where would that be in your opinion?
>
> [Mr. Sweeney]:  In my opinion, **behind the setback line**.
>
> [Board Solicitor]:  You mean **between the setback line** and the street?
>
> [Mr. Sweeney]:  **And the building**.
>
> [Board Solicitor]:  So it's behind the setback.  How far does it extend[]? That's the question.
>
> [Mr. Sweeney]:  . . . **78.2 feet**. . . .
>
> . . . .
>
> [Mr. Sweeney]: . . . The **78 feet is the distance between the house and the front yard setback line**.
>
> [Board Solicitor]:  Would that be the front yard?
>
> [Mr. Sweeney]:  **That's the front yard** . . . .

(*Id.* at 64-65 (emphasis added).)  The Board's Solicitor then asked Mr. Sweeney if the Property's front yard is the total area between the front yard setback line and the

7

house, to which Mr. Sweeney responded, "I have no idea. It's anything that's behind the front yard setback line." (*Id.* at 66.) Later during the hearing, the Board's Solicitor asked Mr. Sweeney, "[s]o obviously the front yard setback encompasses some of the front yard. Would you know where the rest of the front yard might be?" (*Id.* at 91.) Mr. Sweeney responded that the front yard "could be anywhere, wherever the house is . . . ." (*Id.*)

Following Mr. Sweeney's testimony, the Zoning Officer testified, in relevant part, as follows. The Zoning Officer agreed with Mr. Sweeney as to the location of the front yard setback but noted that the issue here is **not** with the location of the front yard **setback** but how far the Property's front **yard** extends **beyond** the front yard setback. (*Id.* at 62.) He stated that, pursuant to "zoning 101," "a front yard is the front line or street line to the front of the principal structure." (*Id.*) With respect to the Property specifically, the Zoning Officer testified that his interpretation is that the Property's front yard "is everything from the front street line to the front of the structure," meaning the area between the front yard setback line and the house. (*Id.* at 63-64.) The Zoning Officer stated that the proposed garage would be located in the area that he considers to be the front yard of the Property. (*Id.* at 63.)

After the Zoning Officer's testimony, several nearby residents spoke in opposition to the Application. Additionally, Maureen Woerner spoke briefly in support of the Application.

C.    Board's Decision

The Board issued its Decision on November 29, 2017, denying Applicants' appeal from the determination of the Zoning Officer. The Board, in relevant part, made the following findings of fact:

8

3. The Property was created by . . . [a] [s]ubdivision recorded on or about March 31, 2014 . . . .

. . . .

9. On or about July 14, 2017, Applicants submitted . . . [the] Application by which they sought to construct a 784[-]square[-]foot detached garage and a new driveway to connect to the new garage.

10. A garage is an accessory building as defined at Section 200 of the [] Ordinance.

. . . .

14. As described above, Applicant[s] propose[] to construct a 784[-]square[-]foot detached garage, the garage would be situated near the southeast corner of [the] Property . . . .

15. Section 1007 of the [] Ordinance prohibits the location of a garage, an accessory building, in the front yard of the Property.

16. Section 200 of the Ordinance defines "front yard" as "[a] yard between a structure and a street line extending the entire length of the street line . . . [.]"

17. Poplar Road ends at the front of [] Applicants' Property, on the southwest side, but . . . does not extend the length of the Property's southern property line.

18. Utilizing this definition, the Property's front yard would only be as wide as Poplar Road.

19. This definition of "front yard", however, as applied to this Property may be determined by the [e]xhibits submitted at the hearing.[]

20. Specifically[,] . . . [t]he . . . Subdivision [Plan], signed by Applicants, and the Borough [] before recording[,] depicts a triangular area at the southwest corner of [] Applicants' Property.

21. The diagonal of this triangle is labeled "front yard setback (line used to establish lot width of 113.78 ft.)". This diagonal will be referred to as "Diagonal Front Yard Setback Line".

22. The Diagonal Front Yard Setback Line is also depicted by a dashed line on . . . [the] Final As-built Plans for [the Property] . . . .

23. [The Final As-Built Plans for the Property] also depicts the location of Applicants' residence.

24. Also shown on [the Final As-Built Plans for the Property] is a line running perpendicular to the Diagonal Front Yard Setback Line with a distance noted as 78.2 feet. This line will be referred to as the "78.2 feet Line".

25. The 78.2 feet Line runs from the Diagonal Front Yard Setback Line to a front corner of the residence . . . .

. . . .

27. With respect to the Property, it is the Board's interpretation that the front yard is that portion of the Property bounded on one side by the Diagonal Front Yard Setback Line. The other side of the front yard is bounded by a line running perpendicular to the 78.2 feet Line (passing through the point where the 78.2 feet Line meets the front corner of the residence), parallel to the Diagonal Front Yard Setback Line and extending to the western and eastern boundaries of the Property.

28. The proposed garage therefore would impermissibly be situated in the front yard.

29. In front of the proposed garage would be area designated "apron".

30. The apron would be connected to a driveway which would exit the Property onto an alley . . . .

31. This alley is described as a "public alley" in deeds submitted into evidence by Applicant[s] . . . .

. . . .

33. The alley has been in existence for more than 21 years and the Borough has not accepted it for dedication as a public street.

34. The [] Ordinance (Section 200) defines a driveway as "[g]enerally a private way for the use of vehicles and pedestrians access between a public street and an interior area within a lot or property." . . . .

10

35. The proposed driveway would run from the interior of Applicants' Property through the alley and then to a public street, Ash Lane.

36. The proposed driveway does not meet the criteria for a driveway as set forth in the [] Ordinance.

(Board Decision, Findings of Fact (FOF) ¶¶ 3, 9-10, 14-25, 27-31, 33-36 (emphasis and footnote omitted).) Based upon the foregoing findings, the Board concluded that "the proposed garage would be situated in the Property's front yard – a location not permitted by the [] Ordinance." (Board Decision at 7.) Additionally, the Board concluded that "the proposed driveway leaves the Property onto an alley, rather than a public street. This too is not permitted by the [] Ordinance." (*Id.*) Accordingly, the Board denied "Applicants' Appeal from the decision of the Zoning Offic[er]." (*Id.* at 9.)

D.    Appeal to Common Pleas

Applicants appealed the Board's Decision to common pleas. The Borough intervened and participated in the proceedings before common pleas. At a conference held on February 28, 2018, the parties agreed that the record was complete and common pleas entered an order memorializing the parties' agreement. (Common pleas Opinion (Op.) at 3 n.2.) After review of the briefs filed by Applicants and the Borough, and without taking additional evidence, common pleas reversed the Decision of the Board by Order and Opinion dated December 31, 2018. With respect to the proposed garage, common pleas concluded that the Board committed an error of law in concluding that the proposed garage's location is within the Property's front yard. Common pleas reasoned:

11

[T]he Board ignored credible testimony and evidence the "triangular area" described in F[OF] . . . 20[] was set by the [] Borough Planning Commission and [] Borough Council [] to address concerns raised at the time regarding the location of the front yard. This triangular area was a compromise that recognized the uniqueness of the [P]roperty and increased the front yard setback from the westerly boundary line to the southern boundary line in a diagonal fashion measuring . . . 138 [feet]. . . . The Board's attempt to define the front yard in any other way is an error of law that cannot be sustained.

(*Id.* at 5.) Additionally, common pleas concluded that the Subdivision Plan "clearly shows the front yard as a triangular shaped area in the southwest corner of the [P]roperty. This triangular area is labeled front yard setback line." (*Id.*)

With respect to the proposed driveway, common pleas concluded that the Board committed an error of law in finding the driveway was not permissible because it did not connect to a public street. Common pleas reasoned:

[T]he Board, while emphasizing "public street" and "interior area within a lot or property," completely ignores the most important word in the definition – generally. Riegelsville Borough Council, by using the word generally, intentionally allowed driveways to connect to things other than "public streets" and "interior areas within a lot or property." Borough Council chose not to use restrictive words such as "must," "shall," or "only" in its definition, thereby acknowledging landowner[]s['] entitlement to the least restrictive use of their property.

(*Id* at 7.) Thus, common pleas concluded that the proposed driveway does not violate the Ordinance simply because it connects to a private alley rather than a public street. Further, common pleas concluded that "[t]o the extent the Board's decision denies [Applicants] the same appurtenant rights of access to the alley as other owners of appurtenant rights to the alley, it is an abuse of discretion." (*Id.* at 8.)

In its Opinion, common pleas noted that the Borough argued before it that "this case concerns land development rather than zoning issues." (*Id.*) Common pleas concluded that the Borough's claims regarding land use were not raised before the Board and, therefore, were waived. (*Id.*) Accordingly, common pleas reversed the Board's Decision and Ordered the Borough "to issue appropriate zoning permits to App[licants] to allow the proposed garage and driveway as requested in the Application." (Dec. 31, 2018 Order.)

On January 3, 2019, the Borough filed a Motion to Reconsider, which common pleas denied by order dated January 15, 2019. The Borough then filed the instant appeal on January 29, 2019. The next day the Borough issued a "Conditional Zoning Permit" to Applicants. The permit authorized Applicants to construct the proposed garage, subject to the following conditions of approval:

1) All litigation and appeals by the []Borough[] regarding this [A]pplication and all related construction have been finalized.

2) No construction is permitted on the 20ft wide water easement . . . .

3) Provide [l]and development application and grading plans for approval by the Borough Engineer.

4) Driveway and road opening permits are required prior to construction . . . .

5) Please note that a Pa[.] One Call, "811" is required prior to any digging or excavation.

(R.R. at 451a-52a.)

Thereafter, Applicants filed a "Motion to Preserve the Status Quo Pending Resolution of Riegelsville Borough Commonwealth Court Appeal" (Motion to Preserve Status Quo), which in effect was a motion to enforce common pleas'

13

December 31, 2018 Order and Opinion. Therein, Applicants argued that the conditions set forth in the Conditional Zoning Permit violated common pleas' December 31, 2018 Order and Opinion. Applicants requested that common pleas "enter an [o]rder directing the withdrawal of the Conditional Zoning Permit and directing" the Borough to pay Applicants $2,500 in sanctions. (R.R. at 371a-72a.)

After the Borough filed a Concise Statement of Errors Complained of on Appeal (Concise Statement) pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P. 1925(b), common pleas held a hearing on Applicants' Motion to Preserve Status Quo on March 15, 2019. At the hearing, Applicants contested the conditions imposed in the Conditional Zoning Permit. In relevant part, Applicants argued the condition that they file a land development application is inconsistent with common pleas' December 31, 2018 Order and Opinion and that any arguments related to land development were waived because the Borough did not raise this issue below. The Borough responded that Applicants "have to meet land development" requirements. (Common pleas Hr'g Tr. at 5.) In support of this contention, the Zoning Officer testified, in relevant part, as follows. The Zoning Officer acknowledged that he did not deny the Application based on the Borough's subdivision and land development ordinance (SALDO) and that he did not need to raise issues related to the SALDO at that time. He stated that Applicants first had to get the Application approved, which was not possible because the proposed garage was located in the front yard of the Property. The Zoning Officer stated that if the Application had been approved, he then "would have . . . said [Applicants] need land development" approval. (*Id.* at 20.) The decision to require a land development application, the Zoning Officer testified, was made in consultation with the Borough's engineer "[a]nd because [Applicants] are altering an area that is grass,

14

hills and part of the original storm water approvals." (*Id.* at 21-22.)  When asked by Applicants' counsel whether he was aware the SALDO "exempts residential accessory structures from submitting to the land development process," the Zoning Officer replied that he did not know if that was true.  (*Id.* at 21.)

After the Zoning Officer's testimony, common pleas reiterated that the Borough did not raise any arguments related to the SALDO before the Board and, therefore, the Borough waived any such arguments.  (*Id.* at 48.)  As to the conditions as a whole, common pleas stated that it was improper for the Borough to "unilaterally" add conditions because people "have a right to use their property." (*Id.* at 53.)  The Borough's Solicitor responded that the Borough would withdraw the conditions imposed by the Conditional Zoning Permit but that the Borough would "still require land development" approval, among other things.  (*Id.* at 56.)

After the hearing, common pleas filed an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), Pa.R.A.P. 1925(a), in support of its Order and Opinion dated December 31, 2018 (Rule 1925(a) Opinion).  However, common pleas' Rule 1925(a) Opinion focused not on Applicant's zoning appeal, which had been addressed in the December 31, 2018 Order and Opinion, but on the Motion to Preserve Status Quo, the conditions set forth in the Conditional Permit, and the Borough's arguments at the March 15, 2019 hearing.  With respect to the condition that Applicants file a land use application, common pleas stated:

> [The Borough] obviously does not understand the law regarding waiver or the fundamental fairness and due process issues underlying it.  [The Borough] claims it will require [Applicants] to obtain land development approval . . . even if [the] Commonwealth Court affirms our decision reversing the . . . Board and directing [the Borough] to issue a zoning permit.[]  This claim is troublesome.  Equally perplexing is the argument this case involves land development.  The [SALDO] makes clear in its definition of land development that it does not apply to the addition of

a residential accessory building.[] This case involves the addition of a residential accessory building.

(Rule 1925(a) Op. at 2-3 (footnotes omitted).) Common pleas concluded its Rule 1925(a) Opinion by stating that it rested on its December 31, 2018 Order and Opinion.[2]

## II.   Discussion

On appeal,[3] the Borough argues: (1) the Board neither committed an error of law nor abused its discretion in determining that the proposed garage would be impermissibly located in the front yard of the Property; (2) the Board neither

---

[2] Pending before the Court is a "Motion to Modify Record on Appeal" (Motion to Modify) filed by the Borough. The Borough's Motion to Modify seeks to strike common pleas' docket entries related to Applicants' Motion to Preserve Status Quo, which was filed after common pleas issued its December 31, 2018 Order and Opinion. On page two of its brief to this Court, the Borough states it is withdrawing its Motion to Modify. Accordingly, we note the Motion to Modify is withdrawn.

[3] The parties disagree as to which adjudication, the Board's Decision or common pleas' December 31, 2018 Order and Opinion, this Court is reviewing. This disagreement is based upon their differing views of whether common pleas took additional evidence in its consideration of Applicants' appeal from the Board's Decision. The Borough argues common pleas did not take additional evidence and, therefore, we review the Board's Decision for an error of law or an abuse of discretion. Applicants, on the other hand, argue that common pleas took additional evidence at the hearing on the Motion to Preserve Status Quo and, therefore, we review common pleas' December 31, 2018 Order and Opinion for an error of law or abuse of discretion. The record establishes that the parties agreed before common pleas that the record in this case was complete and common pleas entered an order to that effect. (Common pleas Op. at 3 n.2.) Since common pleas did not take additional evidence before entering its December 31, 2018 Order and Opinion, addressing Applicants' zoning appeal, our standard of review "is limited to determining whether the zoning hearing board abused its discretion or committed an error of law." *Zoning Hearing Bd. of Sadsbury Twp. v. Bd. of Supervisors of Sadsbury Twp.*, 804 A.2d 1274, 1278 (Pa. Cmwlth. 2002). While additional evidence was offered at the hearing on the Motion to Preserve Status Quo, which in effect sought to enforce the December 31, 2018 Order, that hearing was unrelated to the merits of Applicants' underlying appeal. Although common pleas issued a 1925(a) Opinion that referenced evidence presented at this hearing, that Opinion focused on the Motion to Preserve Status Quo and not the issues raised in the Borough's Concise Statement.

16

committed an error of law nor abused its discretion in determining that the proposed driveway was impermissible as it would not connect to a public street; and (3) common pleas erred in concluding that the Borough waived the ability to apply its SALDO.

Before turning to the merits of the parties' arguments, we recount our role in reviewing zoning appeals. In our consideration of this appeal

> this Court may not substitute its interpretation of the evidence for that of the Board, the fact-finder in this case. The Board is the sole judge of the credibility of witnesses and the weight to be afforded their testimony. Thus, it is the Board's function to weigh the evidence before it. If the record contains substantial evidence, this Court is bound by the Board's findings that result from the resolution of credibility and conflicting testimony.

*Oxford Corp. v. Zoning Hearing Bd. of Borough of Oxford*, 34 A.3d 286, 295 n.9 (Pa. Cmwlth. 2011) (citations omitted). While a zoning board is entitled to deference when interpreting its zoning ordinance, *Hafner v. Zoning Hearing Board of Allen Township*, 974 A.2d 1204, 1210 (Pa. Cmwlth. 2009), it is an abuse of discretion for a zoning board to alter the terms of its ordinance in order to "further restrict the use of property," *Riverfront Development Group, LLC v. City of Harrisburg Zoning Hearing Board*, 109 A.3d 358, 366 (Pa. Cmwlth. 2015) (quoting *Church of the Survivor v. Zoning Hearing Board of Tredyffrin Township*, 568 A.2d 1136, 1338 (Pa. Cmwlth. 1989)). Stated differently, zoning ordinances are to be interpreted "in favor of the landowner and against any implied extension of restrictions on the use of one's property." *Adams Outdoor Advert., LP v. Zoning Hearing Bd. of Smithfield Twp.*, 909 A.2d 469, 484 (Pa. Cmwlth. 2006). A zoning board abuses its discretion if its "findings are not supported by substantial evidence, that is, such relevant evidence that a reasonable mind might accept as adequate to support a conclusion."

17

*Zoning Hearing Bd. of Sadsbury Twp. v. Bd. of Supervisors of Sadsbury Twp.*, 804 A.2d 1274, 1278 (Pa. Cmwlth. 2002).

Further, we have repeatedly reaffirmed that

> a zoning board is not a legislative body, and it lacks authority to modify or amend the terms of a zoning ordinance. "[Z]oning boards . . . must not impose their concept of what the zoning ordinance should be, but rather their function is only to enforce the zoning ordinance in accordance with the applicable law." Thus, [a zoning board] is required to apply the terms of [its z]oning [o]rdinance as written rather than deviating from the terms based on an expressed policy.

*Balady Farms, LLC v. Paradise Twp. Zoning Hearing Bd.*, 148 A.3d 496, 505 (Pa. Cmwlth. 2016) (quoting *Greth Dev. Grp., Inc. v. Zoning Hearing Bd. of Lower Heidelberg Twp.*, 918 A.2d 181, 187 (Pa. Cmwlth. 2007)) (first alteration in original) (emphasis omitted). With these well-established principles in mind, we turn to the parties' arguments.

A. <u>Whether the Board committed an error of law or abused its discretion in determining that the proposed garage would be impermissibly located in the front yard of the Property.</u>

*(1) Parties' Arguments*

The Borough argues that the Board "neither abused its discretion nor committed any error of law in determining that the Application proposed to impermissibly locate the [proposed] garage in the front yard of the Property." (Borough's Brief (Br.) at 9, 12.) The Borough posits that "in tracking the relevant provisions of the [] Ordinance," the Board "rationally interpreted the front yard as [] being" the area between the Diagonal Front Yard Setback Line and Applicants' residence. (*Id.* at 14-15.)

Additionally, the Borough asserts that common pleas "went out of its way to disturb" the Board's findings. (*Id.* at 15.) The Borough contends common pleas' "error in this regard is three-fold."[4] (*Id.*) First, noting that common pleas relied on Mr. Sweeney's testimony to conclude that the front yard of the Property is the triangular area created by the Diagonal Front Yard Setback Line, the Borough asserts that common pleas "had no right or authority to review and assess the credibility of [Mr.] Sweeney's [] testimony" because credibility determinations are solely within the purview of the Board. (*Id.* at 16.) Second, the Borough argues that even if common pleas had a right to make credibility determinations, Mr. Sweeney's testimony was inconsistent with common pleas' finding that the front yard was the triangular area created by the Diagonal Front Yard Setback Line. Citing Mr. Sweeney's testimony that the front yard is "anything that's behind the front yard setback line," the Borough contends Mr. Sweeney's testimony does not support common pleas' conclusion that the triangular area in front of the Diagonal Front Yard Setback Line comprises the entirety of the Property's front yard. (*Id.* at 17) (quoting Board Hr'g Tr. at 66 (emphasis omitted).) Third, the Borough argues common pleas "improperly substituted its opinion for the [Board] by reading into evidence that which was not there." (*Id.*) The Borough takes the position that common pleas' conclusion that the Subdivision Plan "clearly shows the front yard as a triangular shaped area in the southwest corner of the [P]roperty" is not supported by the record because the "Subdivision Plan does not contain the words 'front yard' to describe any area upon it, let alone just the 'triangular area' in the southwest corner of the Property." (*Id.* (citing common pleas Op. at 5).) For these three

---

[4] Although the Borough argues common pleas made multiple errors of law, "[w]here[, as here,] the trial court took no additional evidence, we are limited to determining whether the . . . [B]oard abused its discretion or committed an error of law." *Hafner*, 974 A.2d at 1209 n.1.

19

reasons, the Borough asserts common pleas "erred in finding that the [Board] either abused its discretion or erred as a matter of law in determining that the Application impermissibly proposed to locate the garage in the front yard of the Property." (*Id.* at 18.)

Applicants respond that the Board abused its discretion by not applying the Ordinance's definition of front yard as written. According to Applicants, "[t]he Board's Decision shows that it did not apply" the Ordinance's definition of front yard, which is contrary to the requirement that zoning boards apply the applicable zoning ordinance as written. (Applicants' Br. at 22.) Applicants contend "the Board created a brand-new definition of the term [front yard] as if out of thin air" and, therefore, common pleas correctly concluded "that the Board's re-writing of the Ordinance was an abuse of discretion." (*Id.* at 22-23.) According to Applicants, "based on substantial evidence in the record the . . . Subdivision [Plan] set the front yard setback line and lot wi[d]th for the [] Property in 2014" and the Borough's claim that the "front yard should extend to the lot's boundaries instead of extending to its '[l]ot [w]idth' as set by [the Borough] itself when it approved the . . . Subdivision [Plan]," collaterally attacks that plan. (*Id.* at 23-24.) As such, Applicants argue that "[t]he equitable doctrine of judicial estoppel should bar [the Borough] from asserting these arguments." (*Id.* at 24.)

*(2) Analysis*

The crux of this case is what area constitutes the front yard of the Property and whether the proposed garage will be impermissibly located in the Property's front yard. As noted above, pursuant to Section 1007(a) of the Ordinance, "[n]o accessory buildings o[r] structures shall be located in front yards except school bus shelters." (R.R. at 328a.) Section 200 of the Ordinance defines "Yard" as

> [a]n open space unobstructed from the ground up except for permitted projections and plantings, on the same lot with a structure, extending along a lot line or street line and inward to the structure. The size of a required yard shall be measured as the shortest distance between the structure and a lot line or street line.

(R.R. at 319a.) That section of the Ordinance also defines the term "Yard.Front," in relevant part, as "[a] yard between a structure and a street line and extending the entire length of the street line." (*Id.*) Section 200 of the Ordinance defines "Street line" as "[t]he dividing line between the street and the lot. The street line shall be the same as the legal right-of-way provided that where a future right-of-way width for a road or street has been established, and then that width shall determine the location of the street line." (R.R. at 320a.) The Ordinance requires a minimum front yard depth of 40 feet. (Ordinance Section 502(b), R.R. at 322a.)

Pursuant to Section 200 of the Ordinance, the Board would ordinarily look to a street line to determine the beginning point of a front yard. However, the circumstances of this case are different. Here, the Borough established the Property's front yard setback when it approved the Subdivision Plan in 2014, which included the Diagonal Front Yard Setback Line. The Diagonal Front Yard Setback Line is drawn differently than how a front yard setback would be drawn under the Ordinance because the Diagonal Front Yard Setback Line is wider than the street line created by Poplar Road. Therefore, in effect, the Ordinance's definition of "Yard.Front" was modified with respect to this Property. Mr. Sweeney recognized this in his testimony, stating that the unique configuration of the Property, specifically the fact that the Property has little "street frontage" and the fact that Poplar Road is perpendicular to the Property, necessitated the need for a compromised front yard setback. (Board Hr'g Tr. at 45-48.) The Sweeneys signed

21

the Subdivision Plan before it was recorded and Mr. Sweeney testified that no party, including him or his wife, appealed the Subdivision Plan.

The Board likewise appears to have recognized the unique configuration of the Property, finding that measuring the Property's front yard from the street line would result in the Property's front yard being only as wide as Poplar Road. (Board Decision, FOF ¶ 18.) In recognition of the fact that the Borough established, in agreement with the Sweeneys, the Property's front yard setback in the Subdivision Plan with the Diagonal Front Yard Setback Line, the Board began its measurement of the Property's front yard from the Diagonal Front Yard Setback Line rather than the street line. Contrary to Applicants' assertion otherwise, the Board did not make up a new definition of front yard or collaterally attack what the Borough established in the Subdivision Plan when it measured the Property's front yard from the Diagonal Front Yard Setback Line instead of the street line. Rather, the Board, in essence, gave effect to the agreed upon Diagonal Front Yard Setback Line as the line from which the Property's front yard could be ascertained once a structure was built on the Property. As reflected on the Final As-Built Plans, the Board determined that the Property's front yard extends beyond the Diagonal Front Yard Diagonal Front Yard Setback Line to the "front corner of the residence," a distance of 78.2 feet. (*Id.* ¶ 25.)

Under the Board's interpretation,

> the front yard is that portion of the Property bounded on one side by the Diagonal Front Yard Setback Line. The other side of the front yard is bounded by a line running perpendicular to the 78.2 feet Line (passing through the point where the 78.2 feet Line meets the front corner of the residence), parallel to the Diagonal Front Yard Setback Line and extending to the western and eastern boundaries of the Property.

(*Id.* ¶ 27.)

22

Thus, the Board interpreted the Property's front yard as consisting not only of the triangular area created by the Diagonal Front Yard Setback Line, but also the area between the Diagonal Front Yard Setback Line and the residence and extending to the Property's boundaries. The Board's interpretation of the Property's front yard as extending from the Diagonal Front Yard Setback Line to the residence is consistent with the Ordinance's definition of front yard, which is generally defined as the area between a street line and a primary structure, and with Mr. Sweeney's testimony before the Board that the Property's front yard includes 78 feet between the Diagonal Front Yard Setback Line and the residence. (Board's Hr'g Tr. at 64-65.) Accordingly, we conclude the Board did not err in its interpretation of the Property's front yard or its conclusion that the proposed garage would be impermissibly located in the Property's front yard in violation of the Ordinance.

Common pleas, on the other hand, concluded that the Property's front yard consisted only of the triangular area in the southwest corner of the Property created by the Diagonal Front Yard Setback Line. Common pleas' interpretation of the Property's front yard is not supported by the record. In its December 31, 2018 Opinion, common pleas stated it relied upon Mr. Sweeney's testimony and the Subdivision Plan to conclude that the Property's front yard was limited to the front yard setback area. However, at the Board hearing, Mr. Sweeney testified that the Planning Commission determined the location of the Property's front yard setback, which was accepted and approved by the Borough Council as "a compromise . . . in this circumstance." (*Id*. at 45-48.) Mr. Sweeney **did not** testify that the triangular area created by the Diagonal Front Yard Setback Line was the entirety of the Property's front yard, but that the Property's front yard extended 78 feet **beyond the Diagonal Front Yard Setback Line to the residence**. (*Id.* at 64-65.) Thus, Mr.

23

Sweeney's testimony does not support, and appears to contradict, common pleas' conclusion. The Subdivision Plan likewise does not support common pleas' conclusion because the Subdivision Plan does not label the triangular area created by the Diagonal Front Yard Setback Line as the entirety of the Property's front yard. A front yard setback, while a **part** of the front yard, does **not** comprise the **entirety** of a front yard when a structure is built beyond the front yard setback line. Further, at the time the Subdivision Plan was approved and recorded, there was no structure on the Property. As such, there was no structure from which to measure the front yard when the Subdivision Plan was approved. Therefore, absent evidence that the triangular area created by the Diagonal Front Yard Setback Line was intended by the Borough to constitute the entirety of the Property's front yard, the Diagonal Front Yard Setback Line merely notes the minimum front yard setback of the Property.

For these reasons, the Board did not err in concluding that the proposed garage would be impermissibly located in the Property's front yard, and, therefore, the Board's denial of Applicants' appeal from the Zoning Officer's Decision was not in error.

B.   Whether the Board committed an error of law or abused its discretion in determining that the proposed driveway did not connect to a public street and, therefore, is not permitted.

*(1) Parties' Arguments*

The Borough argues that the Board "neither abused its discretion nor committed any error of law in determining that the Application did not propose connecting the driveway to a 'public street,[']" as required by the Ordinance. (Borough's Br. at 18.) It is contested, the Borough submits, that the Application proposed connecting the proposed driveway "over an existing water easement that pre-dated the [Subdivision] Plan and through [] opposing neighbors' properties, via

their lawns courtesy of an 'alley' which does not now support, and never has supported vehicular or pedestrian traffic." (*Id.*) The Borough argues that in overriding the Board's determination that the proposed driveway did not connect to a public street, common pleas "engaged in a determination of private rights that neither it nor the [Board] had the power to resolve in the context of a zoning application." (*Id.* at 20.) Specifically, citing common pleas' conclusion that "[t]o the extent the Board's [D]ecision denies [the Applicants] the same appurtenant rights of access to the alley as other owners of appurtenant rights to the alley, it is an abuse of discretion," (*id.* at 20 (quoting R.R. at 480a)), the Borough asserts common pleas erred by "wrongly impart[ing] upon the [Board] a function . . . that [was] not assigned to it by the legislature" and by "engag[ing] in a truncated, *de facto* quiet title action . . . that far exceeded its limited scope of [] review." (Borough's Br. at 22.)

Applicants respond that the Board erred in concluding the proposed driveway was not permitted under the Ordinance because it did not connect to a public street. Applicants argue that the Ordinance's definition of driveway "recognizes that sometimes a lot gains access to a public street through a means that is not a direct connection to a public street." (Applicants' Br. at 26.) As such, Applicants contend that "[b]ecause the Board imposed a restriction where none exists, [] c[ommon pleas] [] did not err when it concluded that the Board committed [an] error [of] law when it denied [Applicants'] appeal to the Board." (*Id.* at 27.) Applicants also take issue with the Borough's description of Applicants' easement rights, stating that "there is no evidence in this record or in the public record that anyone has or is now contesting [Applicants'] appurtenant easement rights." (*Id.* at 29.) Applicants argue that they propose to use the alley at issue "as a means of ingress and egress to Ash Lane" and

25

that "[n]either the Board . . . nor [the Borough] can take this private appurtenant right away from [Applicants] without compensation."  (*Id.* at 30.)

### *(2) Analysis*

As stated above, Section 200 of the Ordinance defines "driveway" as "**[g]enerally** a private way for use of vehicles and pedestrians providing access between a public street and an interior area within a lot property."  (R.R. at 318a (emphasis added).)  "Generally" is defined as "usually."  *Generally*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/generally (last visited Oct. 22, 2020).  Thus, the Ordinance defines a driveway as a private way that **usually** connects to a public street.  The Ordinance does not state that a driveway **shall** or **must** connect to a public street.  The Board concluded that "the proposed driveway leaves the Property onto an alley, rather than onto a public street," which "is not permitted by the [] Ordinance."  (Board Decision at 7.)  Common pleas reversed, reasoning that under the Ordinance, a driveway may, but is not required to, connect to a public street. (Common pleas Op. at 7.)  Based upon the Ordinance's definition as generally connecting to a public street, we agree with common pleas that a driveway is not required to connect to a public street.  Therefore, the Board erred by concluding that the proposed driveway was impermissible under the Ordinance because it did not connect to a public street.

As to Applicants' alleged appurtenant rights, common pleas concluded that "to the extent the Board's [D]ecision denies [Applicants] the same appurtenant rights of access to the alley as other owners of appurtenant rights to the alley, it is an abuse of discretion."  (*Id*. at 8.)  However, to the extent that common pleas concluded that Applicants' alleged easement appurtenant rights to cross neighboring property for

26

ingress and egress via the Proposed Driveway were valid and enforceable, such conclusion was issued in error. The Board did not make any specific findings of fact or conclusions of law with respect to the validity of the purported easement nor was the Board's denial based on the existence or enforceability of an easement. Even if it had been, the issue of the validity of the alleged easement appurtenant was not, and could not have been, before the Board. The Board is a creature of statute and may only exercise the authority granted to it by its enabling authority, which does not include determining the validity of easement rights. *See* Section 909.1 of the Pennsylvania Municipalities Planning Code (MPC),[5] 53 P.S. § 10909.1 (listing the matters over which a zoning board has authority to adjudicate). While easement rights may be determined in a quiet title action, *see* Pennsylvania Rule of Civil Procedure 1061(b)(2), Pa.R.C.P. No. 1061(b)(2) (setting forth that a quiet title action may be brought "to determine any right, lien, title or interest in [] land"), such rights cannot be determined in zoning matters under the MPC. As such, to the extent common pleas concluded the purported easement is valid and enforceable, common pleas erred by exceeding its scope of review and improperly incorporating a quiet title action into a zoning appeal.

      C.    <u>Whether common pleas erred in concluding that the Borough waived the issue of whether it could apply its SALDO.</u>

        *(1) Parties' Arguments*

The Borough contends that before common pleas, it "argued that the Application was an impermissible form of land development." (Borough's Br. at 22.) The Borough argues that "[e]ven if [] common pleas correctly determined that

---

[5] Act of July 31, 1968, PL. 805, *as amended*, added by Section 87 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10909.1.

27

[the Application] was pure zoning . . . [common pleas] incorrectly determined that the Borough 'waived' these arguments because zoning is a matter entirely [] distinct from land development." (*Id.*) Accordingly, the Borough "requests that this Court declare that it retains its right to apply any applicable provisions of its SALDO to the extent that [] Applicants' proposed use of the Property constitutes 'land development.'" (*Id.* at 23.)

Applicants respond that the Borough did not sufficiently develop this issue in its brief and, therefore, has waived review of this issue on appeal. To the extent that the Borough's brief was sufficiently developed, Applicants argue that the Borough waived review of the issue of whether it could apply its SALDO by not raising it before the Board. Applicants contend that the first time the Borough objected to the Application "because its plans allegedly violated [the Borough's] SALDO occurred when [the Borough] filed its brief" with common pleas. (Applicants' Br at 32.) Relying on *Red Lion Borough v. Red Lion Borough Zoning Hearing Board* (Pa. Cmwlth., No. 55 C.D. 2017, filed October 20, 2017),[6] Applicants assert the Borough should have raised any arguments related to its SALDO before the Board and, therefore common pleas "did not err when [it] found that [the Borough] waived its SALDO claims having not preserved them before the Board." (Applicants' Br. at 33.)

### *(2) Analysis*

Here, common pleas concluded the Borough waived any arguments related to its SALDO because it did not raise those issues before the Board. We disagree. As

---

[6] Pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b), and Section 414(a) of the Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), unreported panel decisions of this Court may be cited for their persuasive value.

we explained in *Board of Commissioners of Cheltenham Township v. Hansen-Lloyd, L.P.*:

> a **zoning** application addresses the use of the land, while a subdivision plan **addresses how the land is to be developed**. While the governing body of a municipality has broad discretion in adopting standards for the approval of subdivision and land development plans, it cannot include provisions related to the use of land. Regulation of use is a matter appropriate for control through a zoning ordinance.

166 A.3d 496, 504-05 (Pa. Cmwlth. 2017) (emphasis added) (quotation marks and citations omitted).

Thus, zoning and land development are distinctively **separate** matters. *Red Lion Borough* does not support Applicants' assertion that any arguments related to a SALDO must be raised before the Board. In *Red Lion Borough*, we concluded, among other things, that issues not raised before a zoning board are waived on appeal. Slip op. at 6. However, *Red Lion Borough*'s holding relates to issues that **can** be raised before a zoning board. Since land development is distinct from zoning, issues related to noncompliance with a SALDO need not, and cannot, be raised before a zoning board. Land development questions are directed to a municipality's governing body. Section 501 of the MPC, 53 P.S. § 10501. As such, the Borough retains the right to apply its SALDO to the extent Applicants propose any land development in connection with the Property.[7]

---

[7] Applicants assert that even if the Borough preserved its right to invoke its SALDO, the Borough's claims regarding its SALDO are clearly without merit. Specifically, in their brief, Applicants argue that the Application does not fall under the SALDO because residential accessory buildings are not land development under the SALDO. However, we will not address this issue because, as we explained above, land development issues are distinct from zoning issues. The case before us is a zoning appeal. If Applicants believe the SALDO is indeed inapplicable to the proposed construction, they can raise that issue in a land development case if one so arises.

Accordingly, common pleas erred in concluding the Borough waived any arguments it may have related to its SALDO and cannot reassert them.

### III.    Conclusion

At issue in this case is whether the proposed location of the detached garage is within the Property's front yard and whether Applicants are permitted to connect the proposed driveway to the private alley.  Upon review, as to the Board's interpretation of the Property's front yard as extending from the Diagonal Front Yard Setback Line to the front of the residence, we conclude that the Board's interpretation is consistent with Ordinance's definition of front yard.  Because the proposed garage would be impermissibly located in the Property's front yard, the Board did not err in denying Applicants' appeal, and common pleas' December 31, 2018 Order reversing that decision is, itself, reversed.

With respect to the proposed driveway, we agree with common pleas that the Board erred in holding that Applicants' appeal should be denied because the proposed driveway violated the Ordinance.  However, in doing so, common pleas erred by improperly incorporating a quiet title action into this zoning matter to determine Applicants' rights to access the alley.

Further, common pleas erred by concluding that Applicants waived any arguments related to the SALDO.  Zoning matters are distinct from land use matters and, therefore, Applicants did not have to assert arguments related to the SALDO before the Board.

_____

**RENÉE COHN JUBELIRER,** Judge

30

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James G. Sweeney, Eileen Sweeney,     :
Kurt Woerner and Maureen Woerner     :
                                       :
             v.                    :    No. 113 C.D. 2019
                                         :
Riegelsville Borough Zoning Hearing    :
Board                                        :
                                         :
Appeal of:  Borough of Riegelsville     :

# O R D E R

      **NOW**, November 13, 2020, the Order of the Court of Common Pleas of Bucks County dated December 31, 2018, is hereby **REVERSED**.  The Motion to Modify Record on Appeal, filed by the Borough of Riegelsville, is hereby marked as **WITHDRAWN**.


                           _____
                           **RENÉE COHN JUBELIRER,** Judge