IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Station Place, LLC :
From the Decision of North Wales :
Borough Council Dated : No. 29 C.D. 2019
December 26, 2017 : ARGUED: November 9, 2020
:
Appeal of: Station Place, LLC :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge[1]
          HONORABLE MICHAEL H. WOJCIK, Judge (P)
          HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                   FILED: February 9, 2021

Appellant Station Place, LLC (Station Place) appeals from the Court of Common Pleas of Montgomery County's (Common Pleas) December 14, 2018 order, which upheld North Wales Borough Council's (Borough Council) December 26, 2017 decision. In that decision, Borough Council denied Station Place's application for approval (Application) of a revised preliminary land development plan (Revised Plan) that pertained to a 6.49-acre property, located at 501 East Walnut Street in North Wales, Pennsylvania. Reproduced Record (R.R.) at 3a, 113a. After thorough review, we affirm.

## I. Facts and Procedural History

The property at issue in this matter (Property) "is bounded by South 5[th] Street, South 6[th] Street, and a three-story twin house[,]" and "is unique in its proximity to Southeastern Pennsylvania Transportation System [a SEPTA] train station and residential development." *Id.* at 4a. On June 15, 2015, Station Place filed

_____

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Leavitt completed her term as President Judge.

an application with the Borough's Zoning Hearing Board (Zoning Board), through which it requested use and dimensional variances to facilitate the construction of 10 townhomes on the Property, which would be subdivided into 10 lots, *i.e.*, 1 for each townhome, as part of the project. *Id.* at 3a-9a. The Zoning Board convened a public hearing and, on August 20, 2015, subsequently granted the desired variances, subject to the following conditions:

> 1. [Station Place] shall maintain the Property now and during the land development process, and after construction on the Property any undeveloped portion of the Property shall be grass and shall be maintained.
>
> 2. [Station Place] shall discuss with the Borough and the affected neighbors at 113 S. 5[th] Street the separation of the properties and any permanent fencing.
>
> 3. [Station Place] shall adhere to the Exhibit A-5 ([Concept Townhouse Architecture Plan by Minno Wasko Architects and Planners]) rendering for the proposed development as the minimum standard for development of the Property and shall discuss the rendering with Borough Council and other applicable commissions and implement recommendations of Borough Council and the other applicable commissions.
>
> 4. The building coverage on Lots 1 through 10 shall not be increased.
>
> 5. [Station Place] shall proceed in conformance with the testimony and exhibits presented at the [Zoning Board h]earing.
>
> 6. In all other respects, [Station Place] shall comply with all provisions of the statutes, laws, regulations, rules, codes and ordinances of the United States, Commonwealth of Pennsylvania, Montgomery County, [the] Borough and any other municipal entity having jurisdiction over this matter.

*Id.* at 12a.

With these variances in hand, Station Place then submitted a preliminary land development plan (Original Plan) to the Borough on October 15, 2015. *Id.* at 48a. Amy Riddle Montgomery, P.E., the Borough's Engineer, reviewed the Original Plan and, on July 1, 2016, sent a review letter to Borough Manager Christine Hart. *Id.* Therein, Montgomery explained that the Original Plan failed to comply with numerous sections of various Borough ordinances, including its Zoning Ordinance,[2] Subdivision and Land Development Ordinance (SALDO),[3] Stormwater Management Ordinance,[4] and Streets and Sidewalks Ordinance,[5] and, furthermore, contained a multitude of other inconsistencies and deficiencies. *See id.* at 49a-57a. Montgomery also noted that townhomes were not permitted by right on the Property, which was zoned R-C residential, and suggested that the Borough apply the Zoning Ordinance's setback, lot width, side yard, and refuse collection requirements that pertained to properties zoned RM residential multifamily. *Id.* at 49a-50a. As a result, Montgomery recommended that Station Place be required to adequately address these issues before the Borough approved the Original Plan. *Id.* at 57a-58a.

---

[2] BOROUGH ORDINANCE #796 (2014), *available at* http://northwalesborough.org/wp-content/uploads/2014/07/Zoning-Ordinance-796-07-11-2014.pdf (last visited February 8, 2021).

[3] BOROUGH ORDINANCE #787 (2012), *available at* http://northwalesborough.org/wp-content/uploads/2010/12/Chapter-184-Subdivision-and-Land-Development.pdf (last visited February 8, 2021).

[4] The Stormwater Management Ordinance referenced by Hart in this letter was repealed and replaced on October 10, 2017 by a new ordinance that incorporated and "[i]mplemented the [r]equirements of the Wissahickon Stormwater Management Plan[.]" BOROUGH ORDINANCE #807 (2017), *available at* https://northwalesborough.org/wp-content/uploads/2010/12/Chapter-180-Stormwater-Management-1.pdf (last visited January 15, 2021).

[5] BOROUGH ORDINANCE #181 (1965), *as amended*, *available at* https://northwalesborough.org/wp-content/uploads/2018/10/Chapter-181-Streets-and-Sidewalks. pdf (last visited February 8, 2021).

Station Place then submitted its Revised Plan to the Borough on September 29, 2017. *Id.* at 60a. Montgomery reviewed the Revised Plan and, on October 31, 2017, sent another review letter to Hart. *Id.* According to Montgomery, the Revised Plan complied with the Zoning Ordinance's setback, lot width, and side yard regulations for properties zoned RM residential multifamily. *Id.* at 61a. However, the Revised Plan still did not satisfy many requirements imposed by the SALDO and the Stormwater Management Ordinance and contained a number of other deficiencies, including ones that Montgomery had previously identified in her July 1, 2016 letter. *Id.* at 62a-66a. Consequently, Montgomery recommended that the Borough refrain from approving the Revised Plan until Station Place had addressed these issues to the Borough's satisfaction. *Id.* at 66a.

Station Place elected not to return to the drawing board and instead presented the Application, which contained the Revised Plan, to the Borough for consideration and approval. *Id.* at 14a. On December 6, 2017, the Borough's Planning Commission reviewed the Revised Plan, heard public comment thereon, and then voted to recommend to the Borough Council that the Application be denied. Tr. Ct. Record (T.R.) at 297-300.[6] The Borough Council then held a public hearing regarding the Revised Plan on December 12, 2017, after which it denied the Application on December 26, 2017. R.R. at 14a. The Borough Council explained that this denial was warranted for the following reasons:

> 1. The [Revised] Plan fails to take into consideration many of the comments or proposals by the Borough Engineer, as well as . . . Montgomery County['s] and . . . [the] Borough['s respective] Planning Commissions. The . . .

---

[6] The Trial Court Record does not have pages that are sequentially numbered. We have nevertheless elected to cite to specific portions of Trial Court Record using the relevant pages' locations in this document (*e.g.*, the 50th page of the Trial Court Record would be cited as "T.R. at 50").

4

Borough['s] Planning Commission reviewed the matter and voted to recommend that Borough Council deny [the Application].

2. The [Revised Plan] fail[s] to move a driveway that is less than forty feet from the street intersection. A proposed driveway on South Fifth Street for the townhouse proposed on Lot 1 is between 27' and 31' from the intersection of South Fifth Street and East Walnut Street. (SALDO Section 184-10.D(1)).

3. The [Revised Plan has] proposed lot widths less than 25'. [Station Place] neither requested nor received zoning relief from the . . . Zoning . . . Board to have dwelling units less than 25', Section 208-54 of the . . . Zoning [Ordinance] requires lot widths of 25' for each dwelling unit. The review of the Decision of the . . . Zoning . . . Board discloses that [Station Place] neither applied for a variance for a reduced lot width, nor [was it] granted any variance relief for reduced lot width ([*See*] Zoning Application No. Z-15-05 Application and Decision and Order).

4. [Station Place's Revised Plan has] driveways that are located less than 5' from any side or rear property lines. The proposed driveways of lots 1-4 and 6-9 are located closer than 5' to the side property lines (in violation of . . . Zoning [Ordinance] Section 208-54). [Station Place] neither requested zoning relief nor was specifically granted zoning relief with regard to this zoning provision.

5. [Station Place's Revised Plan] would include one off-street parking space in a garage, and one off-street parking space in a driveway stall directly outside of the garage. One of the factors considered at the . . . [Zoning Board h]earing . . . specifically requested zoning relief to allow three stories, so that [Station Place] could provide two-car garages on the first floor of each townhouse and still be able to provide two (2) full stories of living space. ([*See*] Zoning [Board] Decision and Order paragraph #19). [Station Place] has not provided two-car garages, nor enough room to have two cars park in the area outside of the garage. Per paragraph 25 of the Zoning Decision and Order, [Station Place] was to provide two-car garages on each lot, and two parking spaces outside the garage.

5

6. Pursuant to paragraph 33 of the . . . Zoning [Board] Decision and Order, [Station Place] was required to appear before the [Borough's] Shade Tree Commission as part of the Land Development process[,] which never occurred. [Station Place] advised that it was [its] belief that many of the trees were in bad shape and would need to be removed, but never appeared before the [Borough's] Shade Tree Commission as provided by [the Borough's] Shade Tree Regulations, as well as the Zoning [Board] Decision and Order.

7. [Station Place] was required to discuss with the Borough and the [a]ffected neighbors at South Fifth Street the separation of the properties and any permanent fencing ([*See*] paragraph #2 of the . . . Zoning [Board] Decision dated August 20, 2015). [Station Place] has failed to comply with #2 of said Zoning Order.

8. Pursuant to the above mentioned Zoning [Board] Decision and Order, [Station Place] was to discuss the renderings with Borough Council and other applicable commissions to implement a development that would meet the minimum standards of development and not become an eye[]sore at a prominent location in the Borough . . . . [Station Place] was to implement recommendations of Borough Council and other applicable commissions. Said renderings were never provided at the December 12, 2017 [h]earing, and therefore [Station Place] has not implemented the recommendations of Borough Council and other applicable commissions as provided by Order of the Zoning [Board] Decision of August 20, 2015 ([*See*] paragraph #3 of Zoning [Board] Decision and Order).

9. [The Revised Plan] did not contain a 20' wide easement, maintained as lawn, for the proposed storm sewer located behind the proposed lots and through [L]ot 1. The width of the proposed storm water management easement at South Fifth Street is only 13' wide and must be revised to provide the minimum required width of 20' (SALDO Section 184-10.B.(1)(a), (c), and Section 184-15.F).

10. As of the [h]earing date of December 12, 2017, [Station Place] has never met with the [Borough's] Shade Tree Commission as required and therefore all the issues

6

addressed in SALDO provisions 184-25 et al. have not been addressed nor complied with.

R.R. at 15a-16a.

Station Place appealed the denial of its Application to Common Pleas on January 25, 2018. Common Pleas took no additional evidence and, on December 14, 2018, affirmed Borough Council's decision. This appeal to our Court followed.[7]

## II. Discussion

The Pennsylvania Municipalities Planning Code (MPC)[8] sets forth the parameters for how local governmental entities shall handle land development applications. Of relevance to this matter, Section 508(2) of the MPC establishes that

> [w]hen [such an] application is not approved in terms as filed the decision shall specify the defects found in the application and describe the requirements which have not been met and shall, in each case, cite to the provisions of the statute or ordinance relied upon.

53 P.S. § 10508(2). "Where a subdivision plan complies with all objective provisions of the applicable subdivision ordinance as well as all other applicable regulations, the plan must be approved. . . . The rejection of a plan may stand, however, if validly supported by even one of several objections." *Herr v. Lancaster Cnty. Planning Comm'n*, 625 A.2d 164, 168-69 (Pa. Cmwlth. 1993) (internal citation omitted). "[T]he unmet requirements must be objective in order to justify outright rejection of a plan. This means that the ordinance must contain standards by which compliance

---

[7] Since Common Pleas considered no additional evidence, our standard of review is limited to determining whether Borough Council abused its discretion, committed an error of law, or violated Station Place's constitutional rights. 2 Pa. C.S. § 754(b). "An abuse of discretion will be found only if [a local agency's] findings are not supported by substantial evidence, that is, such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Zoning Hearing Bd. of Sadsbury Twp. v. Bd. of Supervisors of Sadsbury Twp.*, 804 A.2d 1274, 1278 (Pa. Cmwlth. 2002).

[8] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

can be measured. . . . Similarly, . . . the unmet requirements must be substantive, not technical." *Robal Assocs., Inc. v. Bd. of Supervisors of Charlestown Twp.*, 999 A.2d 630, 636 (Pa. Cmwlth. 2010) (internal citation omitted). A municipality does not abuse its discretion by declining to approve a land development plan when it reviews it in good faith, gives the applicant a reasonable chance to remedy the objective, substantive deficiencies discovered therein, and ultimately concludes thereafter that one or more deficiencies remain. *See Abarbanel v. Solebury Twp.*, 572 A.2d 862, 865 (Pa. Cmwlth. 1990). Furthermore, when a municipality's zoning hearing board grants relief contingent upon adherence to certain conditions, the applicant's subsequent violation of any of these conditions is the functional equivalent of violating that municipality's zoning ordinance. *See Kulak v. Zoning Hearing Bd. of Bristol Twp.*, 563 A.2d 978, 980 (Pa. Cmwlth. 1989).

With these dictates in mind, we look to Station Place's appellate arguments, which we summarize and reorder as follows. First, Borough Council abused its discretion by denying the Application for the reasons presented in paragraph one of its December 26, 2017 decision, as they are neither supported by citations to a Borough ordinance, nor backed by substantial evidence. Station Place's Br. at 15-16. Second, Borough Council abused its discretion and committed an error of law by denying the Application on account of paragraph two, as the SALDO provision cited therein is not applicable to the Revised Plan and, furthermore, sets forth only general guidance, rather than specific prerequisites for approval. *Id.* at 17-19. Third, Borough Council abused its discretion by denying the Application for the reasons articulated in paragraphs three and four, as they are "inherently contradictory" to the variance relief granted to Station Place by the Zoning Board. *Id.* at 19-21. Fourth, Borough Council abused its discretion by denying the Application on the bases of

8

paragraphs five, seven, and eight, as Borough Council's determinations on these points are not supported by substantial evidence. *Id.* at 21-24. Fifth, the justifications articulated in paragraphs six and ten are similarly unsupported by substantial evidence or any articulated, ordinance-based requirement. *Id.* at 16-17. Finally, Borough Council committed an error of law by denying the Application for the reason articulated in paragraph nine, as the SALDO provision cited therein is not applicable to the Revised Plan. *Id.* at 24-25. Furthermore, Station Place complied to the greatest possible extent with that provision's requirements, given the contours of the Property, as well as because this "hyper-technical issue" should not have impeded approval of the Revised Plan. *Id.* at 25-27.

These arguments, however, do not warrant disturbing Borough Council's denial of the Application. With regard to paragraph two, Section 184-10.D(1) of the SALDO, which Borough Council cited, states in relevant part:

> Driveways shall be so located, as to provide reasonable sight distance at intersections with streets. A stopping area measured 20 feet behind the right-of-way line shall be provided not to exceed a 4% grade. Whenever practicable, driveways shall be located not less than 40 feet from the street intersection.

SALDO § 184-10.D(1); *see* R.R. at 15a. There is no dispute that one of the Revised Plan's proposed driveways is closer than 40 feet from an intersection. *See* Station Place's Br. at 17-18. The SALDO itself mandates strict compliance with its terms,

9

SALDO § 184-3.A,[9] and Station Place presented no evidence suggesting that it could not comply with the 40-foot requirement.[10]

Respecting paragraphs three and four, though the use variance allowed Station Place to build townhomes on the Property, it did not also free Station Place from the Zoning Ordinance's requirements pertaining to lot width[11] and driveway/parking

---

[9] Section 184-3.A states:

> No subdivision or land development of any lot, tract, or parcel of land shall be made, and no street, alley, sanitary sewer, storm drain, water main, gas, oil and electric transmission line, or other improvements in connection therewith, shall be laid out, constructed or dedicated for public use, or travel, or for the common use of occupants of a building abutting thereon, except in strict accordance with this chapter.

SALDO § 184-3.A.

[10] Station Place argues that Section 184-10.D(1) applies to driveways that access two-way streets, but not those like the driveway that is at issue here, which empties onto a one-way street. Station Place's Br. at 18. We disagree, as there is nothing about the plain language of this ordinance provision that would support such a reading. *See* 1 Pa. C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."); *Geerling Florist, Inc. v. Bd. of Supervisors of Warrington Twp.*, 226 A.3d 670, 676 (Pa. Cmwlth. 2020) ("Although the Statutory Construction Act of 1972, 1 Pa. C.S. §§ 1501-1991, is not expressly applicable to the construction of local ordinances, the rules of statutory construction are applicable to statutes and ordinances alike."); *see S & H Transp., Inc. v. City of York*, 210 A.3d 1028, 1038 (Pa. 2019) (interpreting the language used in a local ordinance, rule, or regulation is a legal question for which our standard of review is *de novo* and our scope of review is plenary).

[11] Section 208-54 states, in relevant part:

> The width of each lot shall be not less than indicated below and shall be maintained for the entire depth.
> . . . .
> B. Single-family semidetached dwelling: 25 feet.

Zoning Ordinance § 208-54(B).

space setbacks.[12] *See* R.R. at 15a. Thus, it was incumbent upon Station Place to either abide by these provisions or request dimensional variances therefrom, rather than to embark upon its choice of a third path.

In relation to paragraph five, the Zoning Board noted that Station Place had committed to "providing two-car garages on each lot and two . . . parking spaces outside [each] garage." R.R. at 6a. The Zoning Board also conditioned its grant of variance relief upon "[Station House] proceed[ing] in conformance with the testimony and exhibits presented at the [Zoning Board's h]earing." *Id.* at 12a. Though Station Place contests Borough Council's conclusion that the Revised Plan does not offer two garage spaces for each townhome, Station Place is conspicuously silent about Borough Council's concomitant determination that the Revised Plan only provides one outside parking space per townhome. *See* Station Place's Br. at 21-22. In doing so, Station Place effectively admits that the Revised Plan calls for fewer outdoor parking spaces than what was presented to the Zoning Board.

As for paragraphs six and ten, the Revised Plan involves both planting and removing trees on the Property. *See* R.R. at 127a-29a. Section 185-25 of the SALDO thus applies, as does the Borough's Shade Tree Ordinance;[13] these provisions collectively establish the manner in which this type of arboreal work must be done, as well as that permits authorizing this work must be obtained from the Borough's

---

[12] Borough Council again cited Section 208-54 as the reason for denial, but, in context, it appears that Borough Council intended to reference Section 208-56 instead, which specifically pertains to "[p]arking and access." R.R. at 15a; *see* Zoning Ordinance § 208-56.

Section 208-56 establishes: "All off-street parking spaces and access driveways shall be a minimum of 10 feet in width and shall be located not less than five feet from any side and/or rear lot lines." Zoning Ordinance § 208-56.

[13] BOROUGH ORDINANCE #780 (2011), *available at* https://northwalesborough.org/wp-content/uploads/2010/12/Chapter-174-Shade-Trees-2012.pdf (last visited February 8, 2021).

Shade Tree Commission. *See* SALDO § 184-25 (governing the "[p]reservation and replacement of existing vegetation"); Shade Tree Ordinance §§ 174-4—174-14 (articulating Borough's permitting process for activities affecting and/or involving shade trees); R.R. at 15a-16a (referencing the Borough's "Shade Tree Regulations" and SALDO § 184-25). Despite these directives, there is no evidence in the record showing that Station Place obtained such permits, let alone applied for them in the first place. *Cf.* Shade Tree Ordinance § 174-6 (an application of this nature must be filed with the Borough Manager, who passes it on to the Shade Tree Commission, which will consider it at the Commission's next hearing).

Next, in the context of paragraph seven, the Zoning Board made its decision to grant Station Place's desired variances contingent, in relevant part, upon Station Place "discuss[ing] with the Borough and the affected neighbors at 113 S. 5th Street the separation of the properties and [installation of] any permanent fencing." R.R. at 12a. There is no evidence in the record showing that Station Place ever conferred with the owners of that adjoining parcel about these issues. Moreover, even if we were to take Station Place's word that such a conversation took place, *see* Station Place's Br. at 22-23, it remains that Station Place does not claim that it also communicated with the Borough about such matters.

Finally, regarding paragraph nine, Section 184-10.B(a) and (c) of the SALDO collectively state:

> (a) If easements are used at the rear of lots to provide sanitary sewer, storm sewer, water or gas mains, a minimum easement of 10 feet from the rear of each lot must be provided, or a total minimum easement of 20 feet.
>
> . . . .
>
> (c) Nothing shall be permitted to be placed, set or put within the area of an easement. It shall be maintained as lawn.

SALDO § 184-10.B(a), (c); *see* R.R. at 16a (citing these ordinance provisions). In addition, Section 184-15.F imposes upon developers the twin burdens of securing all easements necessary to handle the flow of storm water or surface water and to dedicate those easements, upon demand, to the Borough. SALDO § 184-15.F; *see* R.R. at 16a (citing this ordinance provision).

Here, the easement section at issue is in the side yard of one of the proposed subdivided lots. *See* R.R. at 16a; T.R. at 430. Therefore, Borough Council improperly relied upon Section 184-10.B(a) here, as that provision only applies to rear yard easements. *See* SALDO § 184-10.B(a). Section 184.15.F is similarly inapplicable, as there is no evidence to suggest that this easement section is legally inadequate or that the Borough ever sought to have Station Place dedicate any portion of the easement area.

Nevertheless, these errors do not render paragraph nine fully invalid. Section 184-10.B(c) states that "nothing" can be placed within an easement of this nature, which must "be maintained as lawn." *Id.* § 184-10.B(c); *see* R.R. at 16a (citing this ordinance provision). Given that the Revised Plan calls for planting trees within this easement section, it fails to comply with this rigid dictate. *See* R.R. at 128a; T.R. at 436.

### III. Conclusion

In summation, at least eight of the paragraphs in Borough Council's December 26, 2017 decision thus state legally and factually valid reasons for

13

denying the Application.[14] Therefore, on the basis of the foregoing analysis, we affirm Common Pleas' December 14, 2018 order.

_____
ELLEN CEISLER, Judge

---

[14] As for the remaining two paragraphs, each may be either factually unsupported or legally erroneous. Paragraph one contains general, nonspecific language and is devoid of citations to ordinances or the aforementioned Zoning Board decision. *See* R.R. at 15a. Next, paragraph eight posits that Station Place did not present Borough Council with a rendering of the proposed development or discuss this rendering at the December 12, 2017 hearing, in violation of the conditions imposed by the Zoning Board. *See id.* at 16a. The Zoning Board decision specifically identifies this rendering as Exhibit "A-5: Concept Townhouse Architecture Plan by Minno Wasko Architects and Planners[.]" R.R. at 4a. There is a rendering in the record submitted to Common Pleas by Borough Council that fits this description, though that rendering does not contain a notation indicating that it is indeed Exhibit A-5. *See* T.R. at 63, 425. At minimum, there is a strong likelihood that paragraph one is contingent upon non-objective requirements, as well as that paragraph eight rests upon a faulty premise. We need not conclusively resolve these issues, however, as determinations in Station Place's favor on these points would not change the outcome in this matter.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Station Place, LLC : 
From the Decision of North Wales : 
Borough Council Dated : No. 29 C.D. 2019
December 26, 2017 : 
 : 
Appeal of: Station Place, LLC : 

## **O R D E R**


AND NOW, this 9th day of February, 2021, it is hereby ORDERED that the Court of Common Pleas of Montgomery County's December 14, 2018 order, which upheld North Wales Borough Council's December 26, 2017 decision to deny Appellant Station Place, LLC's application for approval of a revised preliminary land development plan, is AFFIRMED.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Station Place, LLC : 
From the Decision of North Wales :
Borough Council Dated December 26, : No. 29 C.D. 2019
2017 : Argued: November 9, 2020
:
Appeal of: Station Place, LLC :


BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE MICHAEL H. WOJCIK, Judge(P)
HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

CONCURRING OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: February 9, 2021

I agree with the result reached by the majority. The North Wales Borough Council needed only one objective ground on which to deny Station Place, LLC's application for approval of its revised preliminary land development plan. Borough Council identified several such grounds. I write separately to note that Borough Council's decision improperly relied on zoning standards to deny Station Place's application.

As the majority opinion points out, a land development plan that complies with all "objective provisions of the applicable subdivision ordinance as well as all other applicable regulations … must be approved." *Herr v. Lancaster County Planning Commission*, 625 A.2d 164, 168 (Pa. Cmwlth. 1993). Pennsylvania law separates subdivision and land development approvals, which lie within the jurisdiction of the municipal governing body, from zoning issues, which fall within the jurisdiction of the zoning hearing board. *See generally* Section 909.1

of the Pennsylvania Municipalities Planning Code (MPC), 53 P.S. §10909.1.[1] Thus, when a governing body reviews a land development plan and discovers a zoning issue, it should condition approval on the applicant obtaining a permit from or determination by the zoning officer, which is subject to further review by the zoning hearing board. *See, e.g.*, *Borough of Jenkintown v. Board of Commissioners of Abington Township*, 858 A.2d 136 (Pa. Cmwlth. 2004).

In the case at bar, the Borough's Subdivision and Land Development Ordinance (SALDO)[2] contemplates that procedure. It states:

> The applicant must submit a tentative, minor subdivision, minor land development, standard preliminary, or final plan for review, prior to applying to the Zoning Hearing Board for the granting of variances, special exceptions, and conditional uses. If during the review process it is determined that a variance, special exception, or a conditional use is necessary, then the applicant shall apply to the Zoning Hearing Board for such.

SALDO §184-35G.

Here, Borough Council improperly relied on zoning standards as a basis for rejecting Station Place's land development plan. Specifically, in paragraphs three and four of its decision, Borough Council denied the application on the grounds that Station Place had not received variances from the minimum lot width and driveway setback limitations in the Borough's Zoning Code.[3] Borough Council

---

[1] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10909.1.

[2] BOROUGH OF NORTH WALES SUBDIVISION AND LAND DEVELOPMENT ORDINANCE, Ordinance No. 787-2012 (SALDO). The SALDO is available online at http://northwalesborough.org/wp-content/uploads/2010/12/Chapter-184-Subdivision-and-Land-Development.pdf (last visited February 8, 2021).

[3] BOROUGH OF NORTH WALES ZONING CODE, Ordinance No. 796-2014 (Zoning Code). The Zoning Code is available online at http://northwalesborough.org/wp-content/uploads/2014/07/Zoning-Ordinance-796-07-11-2014.pdf (last visited February 8, 2021).

should have reviewed the plan for compliance with the objective provisions of the Borough's SALDO and other applicable regulations and, assuming there were no issues, conditioned its approval on Station Place obtaining the necessary variances from the lot width and driveway setback limitations. I recognize that Station Place did things out of order by obtaining a variance to construct townhomes before presenting its preliminary plan to Borough Council. Nevertheless, Borough Council still lacked authority to deny the application based on its findings that Station Place did not yet have all of the necessary variances. Further, Borough Council should have been more cooperative with Station Place since it was the Borough's own engineer who suggested that the Borough apply the lot width and setback requirements for a different zoning district.[4] Presumably, Station Place drew up its plan with those requirements in mind.

Nevertheless, I agree with the majority that Borough Council did not err or abuse its discretion by rejecting Station Place's application for noncompliance with the objective requirements of the Borough's SALDO and Shade Tree Regulations.[5] These grounds for rejecting the application were set forth in paragraphs two, six, nine and ten of Borough Council's decision. I concur in the

Section 208-54 of the Zoning Code requires a lot width of 25 feet for a single-family semidetached dwelling. Section 208-56 of the Zoning Code requires a driveway to be located not less than five feet from any side or rear lot line.

[4] In *Raum v. Board of Supervisors of Tredyffrin Township*, 370 A.2d 777, 798 (Pa. Cmwlth. 1977), this Court stated that

> [a] municipality has a legal obligation to proceed in good faith in reviewing and processing development plans. The duty of good faith includes discussing matters involving technical requirements or ordinance interpretation with an applicant, and providing an applicant a reasonable opportunity to respond to objections or to modify plans where there has been a misunderstanding or difference of opinion.

[5] The Borough's Shade Tree Regulations, Borough Ordinance No. 561-1982, *as amended*, are available online at https://northwalesborough.org/wp-content/uploads/2010/12/Chapter-174-Shade-Trees-2012.pdf (last visited February 8, 2021).

majority's analysis with respect to those paragraphs and affirmance of the trial court's order.

_____
MARY HANNAH LEAVITT, President Judge